Donald Gene BURLESON, Appellant,

v.

The STATE of Texas, State.

No. 2–88–301–CR.

Court of Appeals of Texas, Fort Worth.

Jan. 25, 1991.

Law Offices of Beech & Boone and Jack W. Beech, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Asst. Crim. Atty., Chief of Appellate Section and Betty Marshall, Asst. Crim. Atty., for the State.

Before JOE SPURLOCK, II, HILL and MEYERS, JJ.

## OPINION

HILL, Justice.

Donald Gene Burleson, following his plea of not guilty, was convicted by a jury of the offense of harmful access to a computer pursuant to the 1985 version of TEX. PENAL CODE sec. 33.03. Act of June 14, 1985, 69th Leg., R.S., ch. 600, 1985 Tex. Gen.Laws 2246–47, *amended by* Act of June 14, 1989, 71st Leg., R.S., ch. 306, 1989 Tex.Gen.Laws 1265–68. The court assessed punishment at seven years probated and $11,800 in restitution. Burleson urges seven points of error: (1) in points of error one and two he contends that the trial court erred in overruling his motion to quash the indictment because the indictment failed to specify the number of records he allegedly deleted from the computer system of his former employer and because the indictment failed to specify the programs he supposedly used to accomplish such deletions; (2) in points of error three and four he contends that the evidence was insufficient to sustain a finding that data were deleted from his employer's computer memory or storage, and insufficient to sustain a finding that a computer malfunctioned; and, furthermore, in point of error five he contends that the trial court improperly included in its charge the issue of data deletion because the evidence was insufficient to show that data had been deleted; (3) in point of error six he contends that Texas Penal Code section 33.03

is unconstitutional because it is overly broad and vague and, therefore, violates due process under the United States and Texas constitutions; and (4) in point of error seven he contends that the court erred in admitting computer-generated evidence at trial.

We affirm. We hold: (1) that the 1985 version of TEX.PENAL CODE sec. 33.03 as enacted by the sixty-ninth legislature is constitutional as applied to Burleson because it was not too vague to inform him that his conduct was criminal; (2) that the indictment did not fail to provide Burleson with the requisite notice, and that, even if it did, such failure did not prejudice Burleson's defense because his defense was not based upon any information which may have been lacking in the indictment and because an open and full discovery process provided Burleson with whatever information may have been lacking in the indictment; (3) that the evidence was sufficient to sustain beyond a reasonable doubt a finding that data were deleted and a computer did malfunction as well as sufficient to warrant submitting to the jury the question of data deletion; and (4) that the court did not err in overruling Burleson's trial objection to a computer-generated display showing the number of records missing from his employer's data file because such evidence was not hearsay, because it was shown to be accurate and reliable, because it did not violate the best evidence rule or the rules of optional completeness and related writings, because the sponsoring witness was qualified to testify, and because even if the court did err its error did not beyond a reasonable doubt contribute to Burleson's sentence or conviction in that there was other testimony showing that he deleted records from his employer's data file; and, furthermore, the court did not err in overruling Burleson's objection to any computer-generated printout because such printouts were admissible for the same reasons that the computer-generated display was admissible, and because any error which may have been committed did not beyond a reasonable doubt contribute to Burleson's conviction or sentence in that

there was other testimony that he deleted records.

Burleson, a senior programmer/analyst, was fired from his company, USPA, on September 19, 1985. He was also the technical security officer for the company's IBM System 38 computer system and knew the passwords USPA's computer operators used to sign on to the system.

USPA employed about 450 agents who worked world-wide devising financial programs for their clients; the agents were paid monthly commissions totalling about two million dollars. In order for USPA's agents to receive their monthly commissions, USPA would enter commission information gathered from various sources into its computer system and run a preliminary payroll commission report and, two days later, a final payroll commission report which actually issued checks for each agent. Each monthly payroll commission report was compiled from a payroll commission data file which contained about 400,000 individual records.

When the preliminary payroll commission report for September 1985 was checked at about 8:30 a.m. on September 21, two days after Burleson was fired, it was discovered that a large number of the records necessary to compile the report were missing. A history log produced by the computer system showed that between approximately 3:00 a.m. and 3:48 a.m. on September 21, 1985, various terminals at USPA's offices had been turned on, including the terminal in Burleson's former office and the terminal of Al Wynn, a current employee. Wynn testified that he was not in the building on September 21, 1985 when someone signed on to his terminal, and George Jimenez, another employee, testified that he was the only one at USPA on the early morning of September 21 and that he left at 1:00 a.m. and did not return until 7:30 a.m. Although Burleson had turned in a set of keys when he was fired, there was testimony that he had had at least one extra key for the building.

By backtracking various computer printouts, Duane Benson, USPA's programmer for the payroll commission system, testified

that records were deleted from the payroll commission file by a set of programs which were in turn triggered by instructions (jobs) entered into the system at 3:37 a.m. on September 21. The programs which actually deleted the records on September 21 were duplicates of a program (a source program) with a different name that had been created by September 4, 1985 when Burleson was still employed. By September 3, 1985, a program had been created that would duplicate programs, change their name, and move them around in the computer system.

Benson produced a history log generated by the computer that showed that on Labor Day morning, Monday September 2, when USPA was closed for the holidays, someone signed on to Burleson's terminal using both Burleson's security officer password and his personal password. From Burleson's terminal, the source program which would under a different name actually delete the records was compiled or referenced. Also, the program which would duplicate, rename, and move programs around was compiled or referenced. On September 3, Burleson's terminal made several references to the same two programs.

On September 23, 1985, the entire USPA computer system shut down for four hours. On September 28, 1985, Burleson went to Benson's home to pick up videotapes. Benson testified that Burleson admitted that he created the program responsible for shutting down the computer system as well as creating the programs responsible for deleting the records. Benson testified that Burleson specified the particular programs responsible for the shutdown and the deletions.

At trial Burleson presented testimony that the deletion of the records could have been accidental and that the computer system could have shut itself down as part of its normal operating procedure. Burleson denied making any admissions to Benson, and testified that he was not at the USPA offices on September 2–3 because he and his son were visiting Burleson's father in Jasper, Texas on September 2–3. Burleson offered various witnesses and evidence to show that he was out of town on September 2–3, including a Texaco credit card receipt for a flat tire repaired in Rusk, Texas on September 3.

In rebuttal, the State presented evidence that Burleson was seen at USPA on September 2, that he attended a staff meeting on September 3, that his son attended school in Burleson, Texas on September 3, and that the credit card receipt dated September 3, 1985 was on a Texaco credit card form that was not printed or used by Texaco until October 1987.

We first address Burleson's point of error number six challenging the constitutionality of the 1985 version of TEX.PENAL CODE sec. 33.03. The relevant portions of section 33.03 are as follows:

§ 33.03   Harmful Access

(a) A person commits an offense if the person intentionally or knowingly:

(1) causes a computer to malfunction or interrupts the operation of a computer without the effective consent of the owner of the computer or a person authorized to license access to the computer; or

(2) alters, damages, or destroys data or a computer program stored, maintained, or produced by a computer, without the effective consent of the owner or licensee of the data or computer program.

*Id.*

Burleson claims that section 33.03 is overly broad and vague, arguing that it imposes criminal liability for altering data without the consent of the data owner, but that data is often altered as part of the normal work day without such consent. He further argues that no data owner would consent to mistaken alteration; thus, section 33.03 also imposes criminal liability for negligent alteration. Furthermore, Burleson argues that section 33.03 imposes criminal liability for innocently interrupting the operation of a computer without consent. In short, he claims that the statute raises the possibility for criminal liability based on negligence.

■ We hold that the issue of over-breadth is not relevant to this case because section 33.03 does not deal with speech or conduct constitutionally protected by the First Amendment. Traditionally, an attack on a statute as being facially overbroad is reserved for alleged First Amendment violations. *Bynum v. State*, 767 S.W.2d 769, 772 (Tex.Crim.App.1989). Burleson urges no complaint that his First Amendment rights have been violated, nor can we perceive that section 33.03 sweeps within its coverage speech or conduct protected by the First Amendment; consequently, the alleged overbreadth of section 33.03 is not an issue raised in this case. *Id.* at 772.

■ We next address the issue of whether section 33.03 is an unconstitutionally vague penal statute. To show that section 33.03 is unconstitutionally vague, Burleson must not only show that it fails to give fair notice to the general populace of the activity it criminalizes, but also he must show that it is impermissibly vague as applied to his specific conduct. *Id.* at 773–74. Even if we assume *arguendo* that section 33.03 may not give fair notice to a hypothetical programmer who negligently alters data without the effective consent of the data owner, Burleson was not indicted merely for the negligent alteration of data. Count one, paragraph one of the indictment alleged that Burleson, without consent, knowingly and intentionally altered, damaged, and destroyed data by causing his former employer's computer to execute programs that deleted data. Paragraph two alleged that Burleson, without consent, knowingly and intentionally introduced into his employer's IBM System 38 computer system programs designed to interfere with the normal operation of the computer, that such programs did interfere with the normal operation of the computer, and that programs introduced by Burleson caused the system to turn itself off. Count two of

the indictment alleged that Burleson harmfully accessed or attempted to harmfully access his former employer's computer by unlawful entry into his former employer's building.

Considering the indictment under which Burleson was tried, we cannot conclude that section 33.03 was so vague as to not afford Burleson fair notice that the conduct he allegedly engaged in was criminal. The criminal activity for which he was indicted was not that of a law-abiding individual unwittingly ensnared by the prohibitions of a vague penal statute. *Id.* at 775. We overrule point of error number six.

In points of error number one and two, Burleson urges that the trial court erred by overruling his motion to quash the indictment because the indictment failed to specify the number of records he supposedly deleted and failed to identify the programs he supposedly used to accomplish such deletion. Burleson argues that the indictment's failure to specify the number of records deleted substantially affected his right to prepare a defense. Specifically, Burleson claims that he could not counter the numerous theories which could be offered to show how the alleged offense was committed, that he could not determine whether the State was alleging logical or physical deletion of the records[1], and that he could not pinpoint the alleged offense so as to protect himself from double jeopardy in the future. Burleson makes the same argument to attack the indictment's failure to identify the programs he allegedly used, stressing that such failure foreclosed a future defense of double jeopardy.

■ We hold that the indictment was specific enough to allow Burleson to raise, in the future, a defense of double jeopardy if the need were to arise. Count one of the indictment charged that Burleson, in Tarrant County, on or about September 21, 1985, altered, damaged, and destroyed data

---

1. Throughout his brief and intertwined in his points of error, Burleson draws a distinction between physical as opposed to logical deletion of data, in this case the deletion of records used to produce the payroll commission reports. When used by programmers, physical deletion of data means the actual destruction of data.

Logical deletion, however, means that the data has been marked or masked so that it is not recognized and not available for data processing, even though the data itself has not been destroyed. The computer simply does not know that the data exists.

necessary for the production of the September 1985 "registered representative-agent payroll"; that such data was produced, stored, and maintained by an IBM System 38 computer system; that such computer system was owned by William Hugenberg, Jr.; that the harm was caused by the execution of computer programs; and that the introduction of the programs interfered with the operation of the computer and caused the computer to shut down. Given the specificity of the indictment, we fail to see how Burleson would be prevented from raising the defense of double jeopardy if he were tried a second time for the same offense. TEX.CODE CRIM.PROC. ANN. art. 21.04 (Vernon 1989).

■ We also hold that the indictment, without specifying the number of records deleted, sufficiently described the records allegedly deleted to provide Burleson with fair notice of the crime with which he was charged. TEX.CODE CRIM.PROC.ANN. art. 21.09 (Vernon 1989) provides that personal property alleged in an indictment shall be described, if known, by name, kind, number, and ownership; if such descriptions are unknown, a statement to that effect and a general classification will suffice. The records that concern us here are not physical objects that can readily be described by name, kind, and number; rather, they exist as electronically encoded data. Nevertheless, the indictment did allege in general the kind of information contained in the deleted records, it specified their function at a particular point in time (to produce the September 1985 commission payroll), it alleged the ownership of the records, it specified the computer system where the records resided, and it alleged the method by which the records were deleted. We hold that under the facts of this case, the exact number of numerous, electronically encoded records actually deleted is an evidentiary detail, not a matter of notice, and an indictment need not allege evidentiary details. *Livingston v. State,* 739 S.W.2d 311, 321 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895. *Cf. Hendrick v. State,* 731 S.W.2d 147, 149 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd) which upheld

the sufficiency of an indictment that did not specify the name, kind, or number of money stolen, but did allege that the value of the money was more than $750 and less than $20,000.

■ Likewise, we find that a specific description or identification of the computer programs Burleson supposedly introduced into the computer system is an evidentiary issue that need not be pleaded in the indictment. Count one of the indictment alleges that programs were used to delete records, to interfere with the operation of the computer system, and to shut down the computer. We note that the programs alleged in the indictment were the instrumentality by which the alleged crimes were committed. By alleging programs as the instrumentality, the indictment in this case was sufficient to provide Burleson with the requisite notice to prepare a defense. *Cf. Livingston,* 739 S.W.2d at 321–22 upholding the sufficiency of an indictment which alleged only that the murder weapon was a "gun."

■ In points of error one and two, Burleson essentially takes the position that a crime involving computer technology requires a hypertechnical indictment. We do not agree. The indictment is sufficient if it uses ordinary and concise wording so as to inform a person of common understanding what is meant and, with a degree of certainty, gives the accused notice of the offense with which he is charged. *Id.* at 322. Thus, we also find no merit in Burleson's argument that the indictment is deficient because it fails to distinguish between physical and logical deletions of data. Although the distinction between physical and logical deletions may be significant to a programmer, we hold that such is a distinction without a difference for the purpose of section 33.03. Moreover, the distinction between physical and logical deletions is not made in common usage. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 596 (1981) defines "delete" to include the process of obscuring or "marking for exclusion during further processing (as retyping or printing)." Web-

ster's also defines delete as "to eliminate as a factor or a matter for consideration."

■ Even if the indictment did fail to give a requisite item of notice, Burleson has not shown how such defect in the context of this case affected his ability to prepare a defense. *Adams v. State*, 707 S.W.2d 900, 903 (Tex.Crim.App.1986). First, Burleson's own expert testified on direct that the IBM System 38 computer was capable only of logical deletions. Thus, we do not see how the indictment's failure to distinguish between physical and logical deletions could have harmed Burleson. Second, Burleson presented a defense based on alibi and deletion of data by another programmer. These defenses are unrelated to and independent of the alleged defects in the indictment; consequently, any notice defect that may have existed did not prejudice Burleson's defense. *Cf. Id.* at 904 in which an indictment's failure to specify which of two films were to be introduced at an obscenity trial did not prejudice a defense claiming that material depicting normal sex acts does not appeal to prurient interests.

■ Finally, before trial, Burleson had access to the information he claimed was lacking in the indictment. The State followed an open file policy; the record clearly shows that Burleson was provided with full discovery; and Burleson consequently knew the information the State relied on in its prosecution. Because prior to trial Burleson was provided with the information he sought, although not necessarily in the indictment, we find that any harm that may have arisen from the trial court's refusal to quash the indictment had, in the context of this case, no impact on Burleson's ability to muster a defense. *See Bynum*, 767 S.W.2d at 780. We overrule points of error number one and two.

Points of error number three, four, and five are based on challenges to the sufficiency of the evidence. In points of error three and four Burleson uses semantic distinctions to argue that the evidence was insufficient to sustain a finding that he caused data to be deleted from his employer's computer memory or storage, and in-sufficient to sustain a finding that a computer malfunctioned. In point of error number five, Burleson argues that because of the insufficiency of the evidence, the question of data deletion should never have been submitted to the jury.

■ We find that Burleson's semantic distinctions are without merit in this case. Under point of error three, Burleson claims that the evidence was insufficient to support the indictment's allegation that records were deleted because the records were not physically deleted or destroyed, but only logically deleted so that they were inaccessible to the computer for processing the payroll commission file. As we have already held, the distinction between physical and logical data deletions in this case is of no consequence, and the record contains ample evidence from which a rational trier of fact could have found beyond a reasonable doubt that the records, for the purpose of section 33.03, were deleted.

■ Also under point of error number three, Burleson claims that the evidence was insufficient to support the indictment's allegation that data was deleted from his employer's "computer memory and computer storage." Burleson argues that the terms "computer memory" and "computer storage" denote computer hardware as opposed to computer software, and there was no evidence to show whether the data were deleted from hardware or software. Burleson offers nothing to substantiate his claim that the terms "computer memory" and "computer storage" designate only hardware and are not broad enough, as commonly used, to include software and other components of a computer system. Moreover, like the distinction between physical and logical deletions, we hold that the distinction between computer software and hardware, in the context of this case, is of no consequence. Finally, even if the distinction should be observed, the 1985 version of TEX.PENAL CODE sec. 33.01(2) defines "computer" in expansive terms to include not only the central processing unit, but also to include "all input, output, processing, storage, or communication facilities that are connected or related to the

device [central processing unit]." Act of June 14, 1985, 69th Leg., R.S., ch. 600, 1985 Tex.Gen.Laws 2246–47, *amended by* Act of June 14, 1989, 71st Leg., R.S., ch. 306, 1989 Tex.Gen.Laws 1265–68. The evidence was more than sufficient to allow a rational trier of fact to find beyond a reasonable doubt that records were deleted from input, processing, or storage connected or related to the central processing unit.

Under point of error number four, Burleson claims that the evidence was insufficient to support the indictment's allegation that the computer malfunctioned. Burleson argues that the computer (hardware) did not itself malfunction when the records were deleted. Rather, the computer performed properly and its inability to process the deleted records was caused by a software malfunction. The distinction Burleson tries to draw, especially given the broad definition of "computer" under section 33.01, is lost on this court. Moreover, even if the distinction is valid, Burleson totally ignores the undisputed evidence that his employer's computer shut down for a number of hours on September 23, 1985 and the testimony that Burleson admitted he caused the shut down by booby-trapping the computer with a program. We hold that there was sufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt that the computer did malfunction.

In our discussion of point of error number three, we have already addressed Burleson's point of error number five which claims that the evidence was insufficient to warrant a jury submission on the issue of data deletion. Because we hold that the evidence was sufficient to warrant the submission of an issue as to data deletion and sufficient to support a finding that data was deleted, that the evidence was sufficient to support a finding that data were deleted from a computer, and that the evidence was sufficient to support a finding that a computer did malfunction, we overrule points of error numbers three, four, and five.

In point of error number seven, Burleson contends that the trial court improperly overruled his objection to the admission of computer-generated evidence. We note that point of error number seven actually presents two complaints: (1) the court's overruling Burleson's trial objection as to the admissibility of Benson's testimony which was based on a particular computer-generated display, and (2) the court's overruling Burleson's trial objection as to the admissibility of any computer-generated printout.

We first address Burleson's trial objection as to the admissibility of Benson's testimony which was based on a particular computer-generated screen display. The statement of facts shows that Burleson made his trial objection while he had State's witness Benson on voir dire. The objection was made in response to the State's attempt to have Benson testify on direct as to the number of records deleted from the September 1985 payroll commission file. Benson's testimony, in turn, was based on a computer screen display which he caused to be generated on September 21, 1985 when he learned that there was a problem with the payroll commission file. The display indicated that about 160,000 records were missing from the September 1985 payroll commission file. A hardcopy printout of the display was produced by the State, but not admitted into evidence.

We note that Burleson's single trial objection to Benson's testimony based on the computer-generated display includes multiple points, some of which attack the admissibility of Benson's testimony by attacking the admissibility of the computer-generated display itself and by attacking Benson's competence to interpret the display, others which appear to be a misdirected attack on the records contained in the payroll commission file, and yet others which appear to take aim at both the computer-generated display and the payroll commission records.

In a single objection, Burleson urged that Benson's testimony as to the number of records missing from the payroll commission file was hearsay not qualified under the business records exception, that such testimony itself contained hearsay, that the State did not prove that the equip-

ment or programs which generated the display upon which Benson's testimony was based were reliable or operating properly, that there was no showing by the State that Benson was qualified to interpret the display, that admission of the testimony violated the best evidence rule because "underlying documentation of the facts" was not introduced to support Benson's oral testimony, and that admission of Benson's testimony as to the display without the admission of other computer-generated evidence violated the rules of optional completeness and related documents. The court overruled the objection. After voir dire, when the State resumed its direct of Benson and once again inquired as to the number of records missing from the payroll commission file, Burleson twice reurged his objection in summary form by reference to his detailed objection offered on voir dire. The objection was first sustained and then overruled with the court granting a running objection.

█ We hold that the court did not err in overruling Burleson's trial objection that the State had failed to establish a business

records exception for the computer-generated display which served as the basis of Benson's testimony. Had Benson testified as to the content of the payroll commission records themselves and had his testimony been offered to show the truth of the matter asserted, a hearsay exception would undoubtedly have been required to circumvent TEX.R.CRIM.EVID. 801 and 802.

However, Benson did not testify as to the content of the payroll commission records; rather, he testified to the number of records missing from the payroll commission file based upon a computer-generated display. A business rule exception did not have to be established because the type of computer-generated evidence in question (the display of the number of records in the payroll commission file) was not hearsay. It was not a verbal or nonverbal out-of-court statement made by a person. TEX. R.CRIM.EVID. 801. Rather, it was tangible, albeit fleeting, evidence which was generated by the computer itself as part of the computer's internal system designed to monitor and describe the status of the system.[2] The display was offered to show the

2. *See People v. Holowko*, 109 Ill.2d 187, 93 Ill. Dec. 344, 486 N.E.2d 877, 878–79 (1985) in which the Illinois Supreme Court held that computerized printouts of phone traces were not hearsay because such printouts did not rely on the assistance, observations, or reports of a human declarant. The report of phone traces was generated instantaneously as the calls were placed and was "merely the tangible result of the computer's internal operations." In deciding that computer reports of phone traces were not hearsay, the Illinois Supreme Court noted the decision in *State v. Armstead*, 432 So.2d 837, 839–41 (La.1983) in which the Louisiana Supreme Court held that computerized records of phone traces were not hearsay and held that such records were computer-generated data to be distinguished from computer-stored declarations. The Illinois Supreme Court noted that computer science had created many devices "the reliability of which can scarcely be questioned"; thus, their reliability was subject to judicial notice upon a showing "of the accuracy and proper operation of the particular device under consideration." Although the Louisiana Supreme Court did not address the issue of whether the computer's reliability was subject to judicial notice, it did stress that reliability was the main issue concerning the admissibility of computerized phone traces: "We therefore view the computer generated data in this case as demonstrative evidence of a scientific test or experiment."

In Schlueter, *Hearsay—When Machines Talk*, 53 Tex.B.J. 1135 (Oct. 1990), the author criticizes a Dallas Court of Appeals decision which held that the numbers viewed on an intoxilyzer's computer screen (no hardcopy test result was printed) were hearsay. *May v. State*, 784 S.W.2d 494 (Tex.App.—Dallas 1990, pet. ref'd.). Although the *May* decision claims to be based on hearsay, the court's analysis in finding the intoxilyzer results inadmissible shows that the court based its decision not on hearsay, but on the reliability of the test. The court held that for the results to be admissible the State would have to show: (1) that the machine functioned properly on the day of the test, (2) that the machine was operated by one who understood the scientific principles behind it, and (3) that the results be interpreted by a qualified witness so as to eliminate hearsay. *Id.* at 498. We agree with Schlueter that, under the facts presented, the problem with the admissibility of the evidence in *May* was not hearsay, but a failure to authenticate the intoxilyzer; and, furthermore, problems of authentication and hearsay are not interchangeable. Schlueter at 1135. The three prong test for authenticating intoxilyzer results presented in *May* was a test initially elaborated by the Texas Court of Criminal Appeals. *See Harrell v. State*, 725 S.W.2d 208, 209–10 (Tex.Crim.App.1986). Although the third prong does require that intoxilyzer results

number of records missing from a computer file at a particular point in time. Although computer-generated, it was the computer equivalent of a snapshot.

■ We also find no merit to Burleson's hearsay objection if such objection could be construed to address the computer-generated display itself. No doubt the display indirectly showed the conduct of several persons. Benson testified that he generated the display by entering a keyboard command, and his testimony indicates that the IBM System 38 computer was pre-programmed by IBM to generate such displays. However, there is no indication that the command to initiate the display or the programs responsible for the display were verbal or non-verbal assertive conduct. TEX.R.CRIM.EVID. 801.

■ Although Burleson's objection as to Benson's qualifications to testify about the computer-generated screen does directly address the admissibility of Benson's testimony, we find no merit to the objection. Burleson points to nothing indicating that the computer-generated display was so complicated or technical that Benson would need to be qualified as an expert in order to testify as to what the display indicated. Moreover, even if it were necessary that Benson be an expert in order to testify as to what the computer-generated display indicated, we still find no merit to the objection. The statement of facts reveals that Benson had been a senior programmer/analyst for about fifteen years at the time of trial; that he was familiar with USPA's IBM System 38 computer system; that he was familiar with the way payroll commission records were stored in the system; that he had routinely and frequently in the past commanded the computer to display the same type of file description at issue in this case; that he was the one who designed, wrote, and tested the payroll commission system used by USPA; and that he was the most experienced person at USPA in regard to the workings of the

company and the company's computer operations.

■ We hold that the responsibility for making preliminary, factual decisions as to the admissibility of evidence rests with the trial court. TEX.R.CRIM.EVID. 104; *Casillas v. State*, 733 S.W.2d 158, 168 (Tex. Crim.App.1986). Assuming that Benson had to be established as an expert, we fail to see how the court could have abused its discretion in allowing Benson to testify. *Key v. State*, 765 S.W.2d 848, 849–50 (Tex. App.—Dallas 1989, pet. ref'd). We find that there was sufficient evidence of Benson's knowledge, skill, and experience to establish him as an expert if his expertise were a prerequisite to admitting his testimony. TEX.R.CRIM.EVID. 702.

Burleson's objection as to the reliability and accuracy of the computer-generated display does, like his objection as to Benson's qualifications to testify, directly address the issue of the display's admissibility. However, as with the objection to Benson's qualifications, we hold that the objection to the reliability and accuracy of the display is without merit. We note that neither Burleson's objection nor brief clearly states whether his complaint is aimed at the authentication of the computer system which generated the display or at the reliability of the technology behind the system.

■ If the objection were aimed at the authentication of the computer system, we hold that it was properly overruled. The State introduced evidence that the system was working properly when it produced the display and that the system had produced accurate displays in the past. TEX.R. CRIM.EVID. 901(b)(9).

■ If the objection were aimed at the reliability of the technology behind the computer system, we hold that the objection was again properly overruled. Assuming *arguendo* that the computer technology behind the computer-generated display was novel, the State introduced testimony that such technology was generally trusted

be interpreted by a qualified witness so as to eliminate hearsay, we believe such requirement addresses who may testify and does not stand

for the proposition that intoxilyzer results are themselves hearsay.

and accepted in the computer industry. Benson testified as to the sophistication and reliability of the IBM System 38 computer and its self-monitoring programs, and he further testified that for several years he had performed monthly tests on the payroll commission system. Jimenez, another USPA data processing employee, testified that the IBM System 38 computer regularly produced reliable history logs showing when various computer transactions were conducted. Donald Thompson, an employee of IBM who installed and serviced USPA's IBM System 38 computer, testified that the IBM System 38 computer was the most reliable he had ever serviced. Finally, David Kinney, a computer consultant and Burleson's own expert witness, testified that he personally knew of numerous corporations that relied on IBM System 38 computers for their data processing needs, that he personally had written over one million lines of computer code for IBM System 38 computers, and that he had written an oil and gas accounting program for IBM System 34 and System 38 computers which was being used by over 100 businesses in Texas alone. Burleson points to no evidence indicating that the computer or its programs responsible for generating the screen display were not reliable or were not working properly when the display was generated.

Because of the testimony introduced at trial, we find that the State presented ample evidence for the court to conclude by a preponderance of the evidence that the computer technology behind the computer-generated display was trustworthy, reliable, and standard to the computer industry. TEX.R.CRIM.EVID. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987). Regardless of whether Texas courts will apply the relevancy test, as urged by this court, or the *Frye* test in determining the admissibility of novel scientific or technical principles, we hold that the display was nevertheless admissible under either test. *See Kelly v. State*, 792 S.W.2d 579, 584–85 (Tex.App.—Fort Worth 1990, pet. granted) in which this court discusses and applies the relevancy test to DNA fingerprinting;

*see also Glover v. State*, 787 S.W.2d 544, 547–48 (Tex.App.—Dallas 1990, pet. granted) in which the Dallas Court of Appeals discusses and applies the *Frye* test to DNA fingerprinting.

■ We further hold that the court properly overruled Burleson's best evidence objection that "underlying documentation of the facts" was not presented to support Benson's oral testimony. Again, we note that neither the objection nor Burleson's brief clearly states what kind of "documentation of the facts" was lacking. If the objection was addressed to the payroll commission records themselves, we reiterate our holding that an objection as to the records does not reach the issue before us; an objection as to the records does not address the admissibility of testimony concerning the number of records in the payroll commission file. If the objection was addressed to the documentation of the programs which were responsible for the computer-generated display, we reiterate our holding that there was sufficient evidence to authenticate the process responsible for the computer-generated display. If the objection was addressed to the actual display itself, the display qualified as an original under the best evidence rule because it was output other than a printout, was readable by sight, and was shown to be an accurate reflection of the data. TEX.R.CRIM. EVID. 1001(3).

■ Further, we hold that the court properly overruled Burleson's objection that admission of the computer-generated display, without admission of other computer-generated evidence, violated the rules of optional completeness and related documents. In his brief, Burleson argues that a computer non-system save of the payroll commission file on September 19, 1985, two days before the display was generated, was not preserved; consequently, there was no way to compare the number of records in the file before and after the alleged malfunction with the payroll commission system. We hold that because the non-system save was not preserved when it was made—and we note that on September 19, 1985 there appeared to be no reason to

preserve such a save—there was no related or complete writing to introduce into evidence under TEX.CRIM.R.EVID. 106 or 107. Moreover, Burleson presents us with no authority to support his contention in his objection that "Things of this computer [are] one long document. We need to see both ends of it to see the snapshot of what happened." To support Burleson's contention, as applied in this case, would place USPA under the burden of preserving evidence before it was aware of any necessity of doing so. We find that USPA's failure to preserve the non-system save of September 19, 1985 may go to the weight to be accorded the September 21, 1985 computer-generated display, but not its admissibility.

■ Stressing our previous finding that Benson was qualified as an expert, we note that he was qualified to give his opinion as to the number of records missing from the payroll commission file and did not have to base his opinion upon an admissible computer-generated display if the display was the kind of information reasonably relied upon by experts in the field in forming opinions or inferences. TEX.R.CRIM. EVID. 703. The statement of facts shows that the display, whether admissible or not, had been reasonably relied upon by Benson in the past to give the status of the payroll commission file. Because the program which was responsible for the display was supplied by IBM as part of the IBM System 38 computer system, we find that the trial court could have easily inferred that IBM intended that the program and its display be relied upon to give the status of System 38 files. Consequently, we hold that Benson's expert testimony as to the number of records missing from the payroll commission file, even if based on an inadmissible display, was itself admissible under TEX.R.CRIM.EVID. 703.

■ Finally, even if the court did err in admitting Benson's testimony as to the number of records missing from the payroll commission file, such error did not beyond a reasonable doubt contribute to Burleson's conviction or sentence because Benson also testified that Burleson admitted he was responsible for deleting the records. TEX. R.APP.P. 81(b).

We overrule Burleson's point of error number seven in regard to the admission of Benson's testimony which was based on the computer-generated display because the computer-generated display was not hearsay; because Benson was qualified as an expert, if such qualification had been necessary, to testify about the display; because the process behind the display was authenticated and the technology which produced the display was shown to be standard and reliable; because there is no merit to the argument that admission of the display violated the best evidence rule, the rule of optional completeness, or the rule of related writings; because Benson was qualified to give an opinion based on the display even if the display itself were not admissible; and because any error in admitting the testimony was harmless.

■ We next address Burleson's objection as to the admission into evidence of any computer-generated printout. Burleson's objection to any computer-generated printout was the same objection, offered in summary form, that he made to the computer-generated display. Although the trial on the merits consumes over 1,600 pages of testimony and Burleson's brief does not inform us as to when he made his objection, we note that the court granted Burleson a running objection as to all computer-generated printouts when Burleson objected to the State's attempt to develop Benson's direct testimony which was based upon a computer-generated history log showing the date and time of various transactions on the computer system. We also note that in his brief Burleson claims that his objection went to any computer-generated "document," but that his objection at trial was to computer-generated "printouts." For the purpose of our analysis, we can fathom no difference between computer-generated printouts as opposed to documents; however, if there is a difference our analysis is based on printouts as actually objected to by Burleson.

Burleson's brief fails to delineate the kind of computer-generated evidence en-

compassed by his objection to any computer generated printout. From the context of his objection and brief, we note that the computer-generated printouts Burleson complains of in his point of error do not appear to be business records or summaries of business records entered into, processed, and produced by the computer. Rather, the computer-generated evidence Burleson objects to are printouts produced by the computer system which describe or monitor the internal workings of the system. Such evidence includes not only the computer-generated screen display which shows the number of records contained within a computer file, but also computer-generated history logs which show when various terminals accessed the system and when various transactions occurred within the system.

 We hold that the court properly overruled Burleson's objection as to any computer-generated printout for the same reasons that it properly overruled his objection as to the computer-generated display. Even without the use of computer-generated printouts, there was testimony that Burleson admitted deleting records. Consequently, any error in regard to the use of computer-generated printouts did not beyond a reasonable doubt contribute to Burleson's conviction or sentence. TEX.R. APP.P. 81(b). We overrule point of error number seven in regard to Burleson's objection as to any computer-generated printouts. Because we have already overruled point of error number seven in regard to the computer-generated display, point of error number seven is overruled in its entirety.

The judgment is affirmed.