02-10-168-CR












 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.
02-10-00169-CR

 

 


 
 
 Marquais
 Deshawn Gatewood
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 2 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Marquais Deshawn
Gatewood of aggravated robbery with a deadly weapon
and assessed his punishment at thirty years’ confinement.  The trial court
sentenced him accordingly.  Appellant brings three points on appeal,
contending that the trial court violated his Sixth Amendment right to
confrontation by admitting an ATM receipt containing testimonial statements;
that the trial court abused its discretion by admitting over a hearsay
objection the ATM receipt, for which the State failed to lay the predicate; and
that the trial court violated his rights to equal protection by overruling his Batson
challenge.  Because the trial court committed no reversible error, we
affirm the trial court’s judgment.

I. 
Background Facts

On
February 1, 2009, Stephen Simons took his wife’s SUV to a Quikway
gas station for gas.  While he was pumping gas, he saw a dark green sedan
pull into the station and park on the other side of
the gas tank.  Simons took his receipt from the gas pump and then noticed
a man standing in the open door to his wife’s SUV, blocking the driver’s
seat.  The man, who was holding a rifle, told Simons to “[c]ome here.”  At trial, Simons identified the man as
Appellant.

Simons
ran toward the entrance of the Quikway.  At the
entrance, he was met by a man wearing a blue t-shirt.  The man had his
hands wrapped up in his t-shirt.  Simons threw his wallet on the ground
and started walking away.  The man headed to the green sedan, and Simons
heard the car drive away.  Simons noted a portion of the license plate
number—“19.”  He drove home and called the police.

The Quikway had surveillance cameras, and a police officer
dispatched to answer the robbery call went to the store to watch the videotape.
 After watching the videotape, the officer broadcast the descriptions of
the car and of one of the suspects.

On
that same day, Ghassan Daouk
was working at a nearby Oasis Mart.  A customer came into the store and
used the ATM.  After the customer left, Daouk
took the ATM receipt from the machine and tossed it onto the floor. 
Later, a Fort Worth police officer came into the store and asked if anyone had
recently used the ATM machine.  Daouk gave the
officer the ATM receipt.  The receipt, admitted into evidence over
Appellant’s objection, states the location of the store, the time the receipt
was printed, the name “SIMONS/STEPHEN P,” what is purported to be the last four
digits of the card number, and “PIN ERROR.”

Officer
B.W. Denson received the descriptions of the vehicle
and one of the suspects through dispatch.  Denson later saw a green
Cadillac at the Oasis Mart with a “19” in the license plate number. 
Denson saw a man matching the description of one of the suspects leave the
store and get in a green Cadillac.  Denson followed the car and made a
traffic stop at a house behind the Oasis Mart.  Appellant was driving the
car.

II.  Admission of ATM Receipt

A. 
No Confrontation Clause Violation

In
his first point, Appellant argues that the trial court committed constitutional
error by admitting the ATM receipt, thereby denying him his Sixth Amendment
right to confront and cross-examine witnesses against him.  The State
argues that the right of confrontation applies only to testimonial statements,
citing Crawford v. Washington.[2] 
A statement is testimonial when made “under circumstances which would lead an
objective witness reasonably to believe that the statement would be available
for use at a later trial.”[3]

The
ATM receipt in the case now before this court is not the testimony of a
witness.  It is more akin to a reading on a clock, a date on a calendar, a
photograph, or a video or audio recording.  We hold that the ATM receipt
is not a statement by a witness that entitles the defendant to cross-examine
the maker of a statement.  We therefore hold that the trial court did not
violate Appellant’s right of confrontation.  We overrule Appellant’s first
point.

B. 
Hearsay Violation, But Harmless

In
his second point, Appellant contends that the trial court abused its discretion
by admitting the ATM receipt over his hearsay objection when the State failed
to lay the proper predicate for the business records exception.  The State
argues that the receipt is not hearsay because hearsay is defined as “a
statement, other than one made by the declarant while testifying at the trial
or hearing, offered in evidence to prove the truth of the matter asserted.”[4]  “A ‘declarant’ is a person who
makes a statement.”[5] 
A statement is either “an oral or written verbal expression” or “nonverbal
conduct of a person, if it is intended by the person as a substitute for verbal
expression.”[6]

Appellant
candidly points out that this court, as well as several other courts, has found
that computer self-generated data is not hearsay.[7] 
But Appellant also points out that printouts of data placed into a computer by
a person, computer-stored data, are hearsay.[8] 
The Miller court found that the trial court abused its discretion by
admitting a cell phone bill over Miller’s Confrontation Clause and hearsay
objections.[9]  As
Appellant argues, the Miller court rejected the State’s bare assertion
that a computer self-generated cell phone bill was not testimonial or
alternatively, sufficiently trustworthy under Ohio v. Roberts.[10]

To
conclude that the ATM receipt admitted as evidence in the case before us was
automatically generated and therefore not hearsay, we would have to improperly
rely on personal experience because the record is silent.[11]  Similarly, there is no evidence
that an individual entered the data contained on the ATM receipt.  We have
no idea of the source of the ATM receipt.

Further,
Daouk, the clerk at the Oasis Mart, through whom the
ATM receipt was admitted over Appellant’s hearsay and confrontation objections,
testified that he had no knowledge of the records generated by the ATM
machine.  Nor did he have any knowledge of whether or how the records were
kept and whether it was the regular practice to keep them.  The State
therefore did not lay a business records exception predicate.[12]  As a result, we must hold that the
trial court abused its discretion by admitting the ATM receipt.[13]

Having
found error, we must conduct a harm analysis to determine whether the error
calls for reversal of the judgment.[14] 
Because we determine that the error is not constitutional, but rather solely a
hearsay violation, rule 44.2(b) is applicable.[15] 
We therefore disregard the error if it did not affect Appellant=s
substantial rights.[16] 
A substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury=s
verdict.[17] 
Conversely, an error does not affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@[18]

In making this determination, we review the record as a
whole, including any testimony or physical evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, and the
character of the alleged error and how it might be considered in connection
with other evidence in the case.[19] 
We may also consider the jury instructions, the State=s
theory and any defensive theories, whether the State emphasized the error,
closing arguments, and even voir dire, if applicable.[20]

Viewing the record as a whole, Simons, the complainant,
identified the robber as Appellant.  Simons saw the dark green sedan that
was connected to Appellant.  He noted a portion of the license plate
number—“19.”  The Quikway had surveillance
cameras, and the police officer who was dispatched to answer the robbery call
watched the videotape.  The officer broadcast the descriptions of the car
and of one of the suspects.  On the same day, a customer came into the
nearby Oasis Mart and used the ATM.  Without considering the contents of
the ATM receipt, we also note that Denson received the descriptions of the
green sedan and one of the suspects through dispatch.  Denson later saw a
green Cadillac at the Oasis Mart and saw that the license plate contained a
“19.”  He saw a man matching the description of one of the suspects leave
the store and get in a green Cadillac.  Denson followed the car and made a
traffic stop at a house behind the Oasis Mart.  Appellant was driving the
car.

We hold that, after examining the record as a whole, the
evidence exclusive of the ATM receipt was abundant.  We do not rely solely
on eyewitness identification, but also upon objective evidence of videotapes,
the green sedan, and the partial license plate number, as well as upon Simons’s testimony regarding the rifle and the theft. 
In light of the other abundant evidence of guilt, the trial court’s error in
admitting the ATM receipt was harmless.[21]
 We overrule Appellant’s second point.

III.  No Batson Error

In his
third point, Appellant argues that the trial court violated the federal Equal
Protection Clause by overruling his Batson challenges to the State’s
strikes against two minority panel members, Jones and Glover.  As the
Texas Court of Criminal Appeals has explained,

A Batson
challenge to a peremptory strike consists of three steps.  First, the
opponent of the strike must establish a prima facie showing of racial
discrimination.  Second, the proponent of the strike must articulate a
race-neutral explanation.  Third, the trial court must decide whether the
opponent has proved purposeful racial discrimination.

The trial court’s ruling in the third
step must be sustained on appeal unless it is clearly erroneous.  Because
the trial court’s ruling requires an evaluation of the credibility and demeanor
of prosecutors and venire members, and because this evaluation lies peculiarly
within the trial court’s province, we defer to the trial court in the absence
of exceptional circumstances.[22]

Appellant
argues that he identified for the trial court the four minority venire
members—numbers 2, 13, 14, and 20—Jones, Glover, Gooden, and Washington
respectively.  It is uncontested that these venire members were members of
a racial minority.  It is also uncontested that the State struck three of
them.

The
trial court instructed the prosecution to state its reasons for the challenged
strikes, and in overruling the Batson challenges, the trial court found
that Appellant had sufficiently established a prima facie showing.[23]  The State presented its reasons
for striking the specified venire members.  The prosecutor stated that
number 2, Jones, was prosecuted for assault bodily injury-family violence, and
he had inaccurately stated that the case was dismissed.  Number 13,
Glover, the prosecutor explained, had a pending accusation of assault-family
violence that Glover had inaccurately stated was a Class C charge.  The
State also stated as an additional reason for this strike that because Glover
had a pending case in Tarrant County, she could have a bias or prejudice
against the State.  Glover, however, stated that she had no bias against
the State.

As
Appellant pointed out in the Batson hearing, two nonminority panel
members who had criminal histories were not struck.  Number 35, Zweiacker, and number 8, Birchfield,
both had criminal convictions for driving while intoxicated (DWI).  Zweiacker was
arrested for DWI in March 1998, and Birchfield was arrested for DWI in
January 1991.  Appellant points out that those venire members were not
asked about their criminal history during voir dire, and they were not members
of any racial minority.  The State argues that the two venire members with
DWI histories had committed their offenses more than
ten years before the voir dire examination below.  On the other hand, the
State contends, Glover’s case was so recent that it was still pending. 
The State also argues that Jones falsely indicated that the charge against him
had been thrown out and that Glover had misrepresented the seriousness of the
charge against her.  The State argues that nothing in the record suggests
that the two venire members who were not stricken were less than forthcoming.

The
trial court heard the prosecutor’s explanations and concluded that the State
had offered “a reasonable race gender neutral explanation” for its strikes and
that the strikes were valid.[24] 
We conclude that on their face, the State’s explanations for exercising
preemptory challenges against Glover and Jones were race neutral. 
Appellant did not show that the facial and neutral explanations were a pretext
for discrimination.  Nor does the record reflect that the trial court’s
ruling was clearly erroneous.[25] 
Because Appellant has not shown that the trial court’s ruling was clearly
erroneous, we overrule his third point.

IV.  Conclusion

Having
overruled Appellant’s three points on appeal, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; DAUPHINOT, J.; and WILLIAM BRIGHAM
(Senior Justice, Retired, Sitting by Assignment).

 

LIVINGSTON,
C.J. concurs without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November
23, 2011



 









[1]See
Tex. R. App. P. 47.4.





[2]541 U.S. 36, 51–52, 124 S. Ct. 1354, 1364 (2004).





[3]Id.





[4]Tex.
R. Evid. 801(d).





[5]Tex.
R. Evid. 801(b).





[6]Tex.
R. Evid. 801(a).





[7]See
Burleson v. State, 802 S.W.2d 429, 439–40 (Tex.
App.—Fort Worth 1991, pet. ref’d) (holding display showing the number of records
in payroll commission file was not hearsay because it was computer-generated); Miller
v. State, 208 S.W.3d 554, 563 (Tex. App.—Austin
2006, pet ref’d) (noting distinction between printouts of data placed into a
computer by a person and printouts of data generated by the internal operations
of a computer itself).





[8]Stevenson v. State, 920 S.W.2d
342, 343 (Tex. App.—Dallas 1996, no pet.).





[9]Miller,
208 S.W.3d at 563–64.





[10]Id.
at 564; see Ohio v. Roberts, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539
(1980), abrogated by Crawford, 541 U.S. at 68, 124 S. Ct. at 1374.





[11]See
Miller, 208 S.W.3d at 563.





[12]See
Tex. R. Evid. 803(6).





[13]See
Miller, 208 S.W.3d at 564.





[14]See
Tex. R. App. P. 44.2.





[15]See
Tex. R. App. P. 44.2(b); Solomon v. State, 49 S.W.3d
356, 365 (Tex. Crim. App. 2001).





[16]See
Tex. R. App. P. 44.2(b); see Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g),
cert. denied, 526 U.S. 1070 (1999).





[17]King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).





[18]Solomon, 49 S.W.3d at 365; Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).





[19]Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App.
2002).





[20]Id. at 355–56.





[21]See
Tex. R. App. P. 44.2(b); King, 953 S.W.2d
at 271; see also Neal v. State, 256 S.W.3d
264, 285 (Tex. Crim. App. 2008) (assuming ATM receipt was not properly
authenticated and was erroneously admitted but holding error harmless in light
of overwhelming evidence of guilt shown by other evidence), cert. denied,
555 U.S. 1154 (2009).





[22]Grant v. State, 325 S.W.3d 655,
657 (Tex. Crim. App. 2010) (citations omitted).





[23]See
Watkins v. State, 245 S.W.3d 444, 447 (Tex. Crim.
App.), cert. denied, 555 U.S. 846 (2008).





[24]See
id. at 448.





[25]See
id. at
447–48; Whitsey v. State, 796 S.W.2d 707, 721 (Tex. Crim. App. 1989) (op. on reh’g).