

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00049-CR
_____

EDWARD DAVID JAMES III, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 079270-A-CR, Honorable Dee Johnson, Presiding

January 29, 2025

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Edward David James III appeals from his conviction for family-violence-assault by occlusion. After he was found guilty by a jury, he was sentenced to five years of confinement. James raises two issues: (1) Facebook message screenshots identifying him as the sender lacked sufficient authentication, and (2) the trial court should have instructed the jury sua sponte on the lesser offense of simple assault. We affirm the judgment of the trial court.

## Background

Appellant and Kailey Rose began dating in early 2019 and cohabited that summer. They referred to each other as "boyfriend" and "girlfriend" to friends and family. The evidence showed the couple exchanged daily messages over Facebook Messenger for more than a year. Kailey testified that Appellant exhibited distinctive messaging habits, including using asterisks for emphasis.

According to testimony, on February 25, 2020, Kailey returned home to find Appellant intoxicated. An argument about his Facebook profile photo featuring his teenage daughter escalated into the early morning hours. Kailey testified that during the argument, Appellant lunged at her and struck her face repeatedly with a closed fist causing her to fall. Appellant then grabbed her shirt collar and pulled upward, causing a "carpet-burn" under her armpit and marks around her neck.[1] The constriction also impeded Kailey's breathing. The event ended when their dog, Benny, bit Appellant's ankle, allowing Kailey to retreat to the bathroom. After repairing her damaged eyeglasses, Kailey fled with Benny to her brother's house.

Early the next morning, Kailey drove to the home of her friend, Megen Dees, who observed Kailey hysterical and crying, wearing torn clothes, and displaying visible marks around her throat and arms. Megen telephoned Andrea Gibson, a nurse, who photographed Kailey's injuries and urged her to file a police report. Both witnesses corroborated Kailey's account.

---

[1] Photographs taken after the incident showed Kailey also had a "golf-ball-size goose egg" on her forehead and two black eyes. She testified at trial that her armpit continues to flare up and hurt.

Appellant presented a different account of the events through his mother, Pat James, who claimed she had moved in with Appellant following his breakup with Kailey. Pat testified she was present on February 25 and witnessed nothing unusual, maintaining that only she and her son were home. While acknowledging potential bias toward her son and willingness to "help the situation," Pat insisted she "would not cover up for him." Defense counsel highlighted these timeline discrepancies to argue the assault's impossibility given Pat's testimony.

Beginning on February 26, Kailey received messages through Facebook Messenger from an account she identified as Appellant's. The messages to Kailey said in relevant part:

| [Feb. 26 at 12:38 pm] | * please just let me know if you are going to be gone past the first so that I can get the rent paid. I have no reason, or excuse, for that matter, why what happened did . . . But it did, and I am sorry . . . |
|---|---|
| [1:37 pm] | * oh, and don't ever think that it is just you . . . What happened . . . I would've done to anyone who was here. Race, color, creed, religion, . . . doesn't matter. So let that sink in, and forgive yourself . . . I really do Love you, but I AM slaying Demons here right now. I'm on a completely different plane. <br><br> *oh and you DID NOT deserve it. |
| [1:37 pm] | *[link to a Youtube video]* <br><br> *you were just caught in the 'crossfire' |

After Kailey replies at 1:56 p.m. that she will be coming to "get my stuff out tonight," and asks the other party not to be there, she receives an immediate response:

| [1:56 pm] | no <br><br> not going to happen like that here |

3

You can have your stuff

*but that isn't going to happen today

[later in the same string]

*you can come this weekend, and we will both have people here

*this isn't going to happen like at Geoffs

This is My Place

I KNOW what the f$ck I did

I'm dealing with that

You ALL should really look at what the f$ck you are ALL doing

[2:09 pm, after continued disagreement]

Well you better not even call the police.

I'll deal with my sh^t

But I WILL be here.

With my mother

So let me know what time

*matter of fact, you don't even need to be here

*with your little Corolla

Just let your brother bring the trucks

[Mar. 1 at 2:30 am]

I don't need to talk to you, but just know that I have your extra car key, your set of 'Pioneer Woman' utensils, some of Benny's toys and a couple of other sentimental things to you . . .

I will leave them with my mother, and just so you know, she doesn't hate you

*she probably loves you more at this point

*please don't message back

*oh . . . and I'm rea;;y sorry for everything

4

\* really

| | |
|---|---|
| [Mar. 8 at 9:26 p.m. after Kailey consents to receiving the message:] | Thank you. I just really wanted you to know that what happened, you in NO WAY deserved. You are so amazing, and honestly the best thing that has ever happened in my life. I am trying to stop drinking again, because it will eventually destroy me if I don't. But you deserve pure Love, and I'm sorry that we had such a good year for me to just throw it all away. What happened wasn't me, and I hope you know that in your heart. I've been dealing with some things recently, and am still trying to figure it all out. So just know that who I really am Loves you more than anything, and if I never see you again, just know that none of this was your fault, I hope you can heal your heart, mind, body, and soul. |
| | *[later in the same message]* |
| | Please just take care of yourself and Benny, and know that everything will always be okay. I'm so sorry, and I do Love you, regardless of what I became. |

In February 2020, an indictment issued alleging Appellant intentionally, knowingly or recklessly caused bodily injury to Kailey and that the two had a dating relationship as described by Section 71.0021(b) of the Texas Family Code. The indictment charged Appellant with intentionally, knowingly or recklessly impeding the normal breathing or circulation of Kailey's blood by applying pressure to her throat or neck. In January 2024, the jury found Appellant guilty of family-violence-occlusion assault; he was sentenced to five years of confinement.

**Analysis**

Issue 1: Admission of Facebook Messages

In his first issue, Appellant challenges the trial court's admission of Facebook messages alleged to be between him and Kailey (State's Exhibit 17, quoted in part above) on three grounds. We address each argument in turn.

A. Lack of Authentication

First, Appellant argues that the trial court erred by admitting screenshots of the Facebook messages quoted above. He argues they were not properly authenticated and that the State failed to establish the messages were actually sent by him. We disagree.

We review a trial court's evidentiary rulings for abused discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). A trial court abuses its discretion only when its ruling falls outside the zone of reasonable disagreement. *Id. Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). Only relevant evidence is admissible, and evidence must be authentic to be relevant. TEX. R. EVID. 401, 402; *Tienda*, 358 S.W.3d at 638. Authentication is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims. TEX. R. EVID. 901(a). Rule 901(b) provides a non-exhaustive list of several ways evidence may be authenticated, including testimony from a witness with knowledge that "an item is what it is claimed to be," as well as via evidence of "distinctive characteristics" such as appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances. TEX. R. EVID. 901(b)(1), (4). The trial court, in its gate-keeping role, need only determine

6

whether sufficient facts exist to support a reasonable jury finding of authenticity. *Tienda,* 358 S.W.3d at 638.

Kailey established the messages' authenticity through both her direct testimony and circumstantial evidence. She testified that she and Appellant had exchanged daily Facebook messages for over a year, and these communications came from the same account. The messages bore Appellant's distinctive writing style, particularly his characteristic use of asterisks for emphasis. The messages' substance demonstrates intimate knowledge of personal effects and details present in a shared living arrangement: references to Kailey's spare car key, her Corolla, her dog Benny, and her "Pioneer Woman" utensils. The sender claimed the residence as "My Place" and referenced his mother being present—a detail that aligns with Pat James's testimony about living with Appellant. Moreover, these statements were made in the immediate aftermath of the incident, and as Kailey sought to retrieve her belongings from their shared residence.

Appellant faults the State for not obtaining independent corroboration of Kailey's testimony, accessing Facebook's records directly, or reviewing Appellant's complete Facebook history. But our authentication analysis focuses on the evidence actually presented at trial, not what additional steps the State could have taken. The State need not rule out all possibilities inconsistent with authenticity or prove authenticity beyond reasonable doubt. *Campbell v. State,* 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no. pet.) The weight of testimony to give to an interested versus disinterested witness remains a jury determination. *Tienda*, 358 S.W.3d at 646. In sum, we hold that the State sufficiently established authenticity of the messages and sufficiently allowed the jury to determine that the statements were made by Appellant.

## B. Violation of Best Evidence Rule

Appellant next argues the Facebook message evidence violates the best evidence rule, which requires producing original writings, recordings, or photographs to prove their content. TEX. R. EVID. 1002. For electronic information, an "original" includes "any printout—or other output readable by sight—if it accurately reflects the information." TEX. R. EVID. 1001(d); s*ee Burleson v. State*, 802 S.W.2d 429, 441 (Tex. App.—Fort Worth 1991, pet. ref'd) (holding that computer-generated "display" qualifies as original if readable by sight). When such output is unavailable, other evidence of content is admissible. TEX. R. EVID. 1004(b); *Ellis v. State*, 517 S.W.3d 922, 930 (Tex. App.—Fort Worth 2017, no pet.).

Though Appellant characterizes the evidence as mere screenshots, the record shows the State both offered the screenshots and uploaded the messages from Kailey's phone to "TechShare," a county software system, sharing them with defense counsel. When printer issues arose, the trial court offered to help print the TechShare messages, but defense counsel opted to rely on the digital versions. Kailey testified the screenshots accurately depicted her Facebook conversations with Appellant, which the trial court confirmed through in-camera review. Finding no evidence of alterations and no objection to the screenshots' quality compared to the uploaded versions, the trial court properly admitted the evidence. *See Biggs v. State*, No. 06-18-00177-CR, 2019 Tex. App. LEXIS 3671, at *4–7 (Tex. App.—Texarkana May 8, 2019, no pet) (mem. op.).

## C. Danger of Unfair Prejudice

Appellant further argues the Facebook messages should have been excluded under Rule 403 because their probative value was substantially outweighed by unfair prejudice. Although he concedes the messages' probative value if properly authenticated, Appellant contends their admission merely bolstered Kailey's testimony without serving any real evidentiary need.[2] We disagree.

Trial courts have broad discretion in weighing evidence's probative value against potential unfair prejudice, confusion of issues, misleading effects, undue delay, or needless cumulation. TEX. R. EVID. 403. *See Perkins v. State*, 664 S.W.3d 209, 216–17 (Tex. Crim. App. 2022). Our analysis conducts a balancing test to consider, for example, whether the evidence might suggest a decision on an improper basis, distract from the main issues, receive undue weight from an ill-equipped jury, or consume inordinate time. *See Woods v. State*, No. 07-22-00208-CR, 2023 Tex. App. LEXIS 5696, at *4–5 (Tex. App.—Amarillo Aug. 1, 2023, no pet.) (mem. op.). Improper bolstering occurs when evidence serves only to enhance witness credibility without substantively contributing to prove consequential facts. *See Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993); *Bezerra v. State*, 485 S.W.3d 133, 142 (Tex. App.—Amarillo 2916, pet. ref'd). However, evidence that makes even an incremental contribution to proving a relevant fact is not bolstering. *Id.*

---

[2] We do not address Appellant's assertion that contested authenticity reduces the messages' probative force, as he provides no authority for this position. *See Johnson v. State*, No. 05-04-01049-CR, 2005 Tex. App. LEXIS 9195, at *2–3 (Tex. App.—Dallas Nov. 4, 2005, pet. ref'd) (mem. op.).

We hold that the Facebook messages here served legitimate evidentiary purposes beyond bolstering Kailey's credibility. Appellant's defense centered on denying that he was involved in the incident, supported by his mother's testimony that Kailey was not present that night. The messages provide independent evidence of events surrounding the incident, including Appellant's expressions of remorse and references to his actions. In such a case with a single victim and no independent corroborating witness, the State's need for this evidence was substantial. While the messages make no direct admission of assault, their allusions to the incident and expressions of regret immediately following the period Kailey alleged she was assaulted helped rebut Appellant's defensive theory. As Appellant concedes, presenting the evidence consumed minimal time. The messages' probative value outweighed their prejudicial effect, particularly given defense counsel's opportunity to cross-examine Kailey about them.

Having overruled each of Appellant's three complaints about the trial court's admission of the Facebook messages, we accordingly overrule Appellant's first issue.

Issue Two—Lesser-included Offense

In his second issue, Appellant contends the trial court should have instructed the jury on simple assault as a lesser-included offense of family-violence-occlusion assault. Such an analysis begins with determining whether error exists in the jury charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Though Appellant did not object to the charge at trial, we must review his claim. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). However, absent preservation, the judgment will not be reversed

unless the trial court's error is so egregious that it deprived Appellant of a fair trial. *Marshal v. State*, 479 S.W.3d 840, 842 (Tex. Crim. App. 2016).

Family-violence-occlusion assault combines the basic assault elements of intentionally, knowingly, or recklessly causing bodily injury under Penal Code § 22.01(a)(1), with enhancement provisions under § 22.01(b)(2). The enhancement requires proof of both a qualifying family relationship defined under the Family Code[3] and impediment to normal breathing or circulation through pressure to the throat/neck or blocking the nose/mouth. TEX. PENAL CODE ANN. § 22.01(b)(2)(B).

Appellant acknowledges the Court of Criminal Appeals has held that simple assault is not a lesser-included offense of occlusion assault unless the parties' relationship is disputed or the evidence suggests only an attempted occlusion. *Ortiz v. State*, 623 S.W.3d 804, 808, 810 (Tex. Crim. App. 2021). He raises neither circumstance. Instead, he argues an instruction was required because no evidence showed he directly applied pressure to Kailey's throat. This argument fails because the statute contains no such requirement. *See Marshal v. State*, 479 S.W.3d 840, 845 (Tex. 2016) (upholding conviction where defendant used pillow to impede breathing).

Appellant alternatively argues the instruction was necessary to present his theory that he lacked the requisite mental state. However, simple assault and occlusion assault share the same *mens rea* requirements. *Compare* TEX. PENAL CODE ANN. § 22.01(a)(1) *with* 22.01(b)(2)(B). The difference lies not in mental state but in the enhancement

---

[3] There is no dispute that Appellant and Kailey were in a dating relationship for nearly a year at the time of the incident. *See* TEX. FAM. CODE ANN. §§ 71.0021, 71.005.

11

elements that elevate the offense from a misdemeanor to a felony. We find that the trial court properly instructed the jury on the required mental state.

We overrule Appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

Lawrence M. Doss
Justice

Do not publish.