

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00169-CR

MARQUAIS DESHAWN
GATEWOOD
                                                    APPELLANT

V.

THE STATE OF TEXAS                                  STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Marquais Deshawn Gatewood of aggravated robbery with a deadly weapon and assessed his punishment at thirty years' confinement. The trial court sentenced him accordingly. Appellant brings three points on appeal, contending that the trial court violated his Sixth Amendment right to confrontation by admitting an ATM receipt containing testimonial statements; that the trial court abused its discretion by admitting over a hearsay

---

[1]See Tex. R. App. P. 47.4.

objection the ATM receipt, for which the State failed to lay the predicate; and that the trial court violated his rights to equal protection by overruling his *Batson* challenge. Because the trial court committed no reversible error, we affirm the trial court's judgment.

## I. Background Facts

On February 1, 2009, Stephen Simons took his wife's SUV to a Quikway gas station for gas. While he was pumping gas, he saw a dark green sedan pull into the station and park on the other side of the gas tank. Simons took his receipt from the gas pump and then noticed a man standing in the open door to his wife's SUV, blocking the driver's seat. The man, who was holding a rifle, told Simons to "[c]ome here." At trial, Simons identified the man as Appellant.

Simons ran toward the entrance of the Quikway. At the entrance, he was met by a man wearing a blue t-shirt. The man had his hands wrapped up in his t-shirt. Simons threw his wallet on the ground and started walking away. The man headed to the green sedan, and Simons heard the car drive away. Simons noted a portion of the license plate number—"19." He drove home and called the police.

The Quikway had surveillance cameras, and a police officer dispatched to answer the robbery call went to the store to watch the videotape. After watching the videotape, the officer broadcast the descriptions of the car and of one of the suspects.

On that same day, Ghassan Daouk was working at a nearby Oasis Mart. A customer came into the store and used the ATM. After the customer left,

2

Daouk took the ATM receipt from the machine and tossed it onto the floor. Later, a Fort Worth police officer came into the store and asked if anyone had recently used the ATM machine. Daouk gave the officer the ATM receipt. The receipt, admitted into evidence over Appellant's objection, states the location of the store, the time the receipt was printed, the name "SIMONS/STEPHEN P," what is purported to be the last four digits of the card number, and "PIN ERROR."

Officer B.W. Denson received the descriptions of the vehicle and one of the suspects through dispatch. Denson later saw a green Cadillac at the Oasis Mart with a "19" in the license plate number. Denson saw a man matching the description of one of the suspects leave the store and get in a green Cadillac. Denson followed the car and made a traffic stop at a house behind the Oasis Mart. Appellant was driving the car.

## II. Admission of ATM Receipt

### A. No Confrontation Clause Violation

In his first point, Appellant argues that the trial court committed constitutional error by admitting the ATM receipt, thereby denying him his Sixth Amendment right to confront and cross-examine witnesses against him. The State argues that the right of confrontation applies only to testimonial statements, citing *Crawford v. Washington*.[2] A statement is testimonial when made "under

---

[2]541 U.S. 36, 51–52, 124 S. Ct. 1354, 1364 (2004).

circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[3]

The ATM receipt in the case now before this court is not the testimony of a witness.  It is more akin to a reading on a clock, a date on a calendar, a photograph, or a video or audio recording.  We hold that the ATM receipt is not a statement by a witness that entitles the defendant to cross-examine the maker of a statement.  We therefore hold that the trial court did not violate Appellant's right of confrontation.  We overrule Appellant's first point.

## B.  Hearsay Violation, But Harmless

In his second point, Appellant contends that the trial court abused its discretion by admitting the ATM receipt over his hearsay objection when the State failed to lay the proper predicate for the business records exception.  The State argues that the receipt is not hearsay because hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[4]  "A 'declarant' is a person who makes a statement."[5]  A statement is either "an oral or written verbal expression" or "nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression."[6]

---

[3]*Id.*

[4]Tex. R. Evid. 801(d).

[5]Tex. R. Evid. 801(b).

[6]Tex. R. Evid. 801(a).

4

Appellant candidly points out that this court, as well as several other courts, has found that computer self-generated data is not hearsay.[7] But Appellant also points out that printouts of data placed into a computer by a person, computer-stored data, are hearsay.[8] The *Miller* court found that the trial court abused its discretion by admitting a cell phone bill over Miller's Confrontation Clause and hearsay objections.[9] As Appellant argues, the *Miller* court rejected the State's bare assertion that a computer self-generated cell phone bill was not testimonial or alternatively, sufficiently trustworthy under *Ohio v. Roberts*.[10]

To conclude that the ATM receipt admitted as evidence in the case before us was automatically generated and therefore not hearsay, we would have to improperly rely on personal experience because the record is silent.[11] Similarly, there is no evidence that an individual entered the data contained on the ATM receipt. We have no idea of the source of the ATM receipt.

---

[7]*See Burleson v. State*, 802 S.W.2d 429, 439–40 (Tex. App.—Fort Worth 1991, pet. ref'd) (holding display showing the number of records in payroll commission file was not hearsay because it was computer-generated); *Miller v. State*, 208 S.W.3d 554, 563 (Tex. App.—Austin 2006, pet ref'd) (noting distinction between printouts of data placed into a computer by a person and printouts of data generated by the internal operations of a computer itself).

[8]*Stevenson v. State*, 920 S.W.2d 342, 343 (Tex. App.—Dallas 1996, no pet.).

[9]*Miller*, 208 S.W.3d at 563–64.

[10]*Id.* at 564; *see Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980), *abrogated by Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374.

[11]*See Miller*, 208 S.W.3d at 563.

Further, Daouk, the clerk at the Oasis Mart, through whom the ATM receipt was admitted over Appellant's hearsay and confrontation objections, testified that he had no knowledge of the records generated by the ATM machine. Nor did he have any knowledge of whether or how the records were kept and whether it was the regular practice to keep them. The State therefore did not lay a business records exception predicate.[12] As a result, we must hold that the trial court abused its discretion by admitting the ATM receipt.[13]

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.[14] Because we determine that the error is not constitutional, but rather solely a hearsay violation, rule 44.2(b) is applicable.[15] We therefore disregard the error if it did not affect Appellant's substantial rights.[16] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[17]

---

[12] See Tex. R. Evid. 803(6).

[13] See Miller, 208 S.W.3d at 564.

[14] See Tex. R. App. P. 44.2.

[15] See Tex. R. App. P. 44.2(b); Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

[16] See Tex. R. App. P. 44.2(b); see Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), cert. denied, 526 U.S. 1070 (1999).

[17] King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."[18]

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case.[19] We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable.[20]

Viewing the record as a whole, Simons, the complainant, identified the robber as Appellant. Simons saw the dark green sedan that was connected to Appellant. He noted a portion of the license plate number—"19." The Quikway had surveillance cameras, and the police officer who was dispatched to answer the robbery call watched the videotape. The officer broadcast the descriptions of the car and of one of the suspects. On the same day, a customer came into the nearby Oasis Mart and used the ATM. Without considering the contents of the ATM receipt, we also note that Denson received the descriptions of the green sedan and one of the suspects through dispatch. Denson later saw a green Cadillac at the Oasis Mart and saw that the license plate contained a "19." He

---

[18] *Solomon*, 49 S.W.3d at 365; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

[19] *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

[20] *Id.* at 355–56.

7

saw a man matching the description of one of the suspects leave the store and get in a green Cadillac. Denson followed the car and made a traffic stop at a house behind the Oasis Mart. Appellant was driving the car.

We hold that, after examining the record as a whole, the evidence exclusive of the ATM receipt was abundant. We do not rely solely on eyewitness identification, but also upon objective evidence of videotapes, the green sedan, and the partial license plate number, as well as upon Simons's testimony regarding the rifle and the theft. In light of the other abundant evidence of guilt, the trial court's error in admitting the ATM receipt was harmless.[21] We overrule Appellant's second point.

## III.  No *Batson* Error

In his third point, Appellant argues that the trial court violated the federal Equal Protection Clause by overruling his *Batson* challenges to the State's strikes against two minority panel members, Jones and Glover. As the Texas Court of Criminal Appeals has explained,

> A *Batson* challenge to a peremptory strike consists of three steps. First, the opponent of the strike must establish a *prima facie* showing of racial discrimination. Second, the proponent of the strike must articulate a race-neutral explanation. Third, the trial court must decide whether the opponent has proved purposeful racial discrimination.

---

[21]*See* Tex. R. App. P. 44.2(b); *King*, 953 S.W.2d at 271; *see also Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008) (assuming ATM receipt was not properly authenticated and was erroneously admitted but holding error harmless in light of overwhelming evidence of guilt shown by other evidence), *cert. denied*, 555 U.S. 1154 (2009).

8

The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous. Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances.[22]

Appellant argues that he identified for the trial court the four minority venire members—numbers 2, 13, 14, and 20—Jones, Glover, Gooden, and Washington respectively. It is uncontested that these venire members were members of a racial minority. It is also uncontested that the State struck three of them.

The trial court instructed the prosecution to state its reasons for the challenged strikes, and in overruling the *Batson* challenges, the trial court found that Appellant had sufficiently established a prima facie showing.[23] The State presented its reasons for striking the specified venire members. The prosecutor stated that number 2, Jones, was prosecuted for assault bodily injury-family violence, and he had inaccurately stated that the case was dismissed. Number 13, Glover, the prosecutor explained, had a pending accusation of assault-family violence that Glover had inaccurately stated was a Class C charge. The State also stated as an additional reason for this strike that because Glover had a pending case in Tarrant County, she could have a bias or prejudice against the State. Glover, however, stated that she had no bias against the State.

---

[22] *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (citations omitted).

[23] *See Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App.), *cert. denied*, 555 U.S. 846 (2008).

As Appellant pointed out in the *Batson* hearing, two nonminority panel members who had criminal histories were not struck. Number 35, Zweiacker, and number 8, Birchfield, both had criminal convictions for driving while intoxicated (DWI). Zweiacker was arrested for DWI in March 1998, and Birchfield was arrested for DWI in January 1991. Appellant points out that those venire members were not asked about their criminal history during voir dire, and they were not members of any racial minority. The State argues that the two venire members with DWI histories had committed their offenses more than ten years before the voir dire examination below. On the other hand, the State contends, Glover's case was so recent that it was still pending. The State also argues that Jones falsely indicated that the charge against him had been thrown out and that Glover had misrepresented the seriousness of the charge against her. The State argues that nothing in the record suggests that the two venire members who were not stricken were less than forthcoming.

The trial court heard the prosecutor's explanations and concluded that the State had offered "a reasonable race gender neutral explanation" for its strikes and that the strikes were valid.[24] We conclude that on their face, the State's explanations for exercising preemptory challenges against Glover and Jones were race neutral. Appellant did not show that the facial and neutral explanations were a pretext for discrimination. Nor does the record reflect that

---

[24] *See id.* at 448.

the trial court's ruling was clearly erroneous.[25]  Because Appellant has not shown

that the trial court's ruling was clearly erroneous, we overrule his third point.

## IV.  Conclusion

Having overruled Appellant's three points on appeal, we affirm the trial

court's judgment.

LEE ANN DAUPHINOT<br>
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT, J.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

LIVINGSTON, C.J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 23, 2011

---

[25] *See id.* at 447–48; *Whitsey v. State*, 796 S.W.2d 707, 721 (Tex. Crim. App. 1989) (op. on reh'g).