Frank Delvis MAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–8801324–CR.

Court of Appeals of Texas, Dallas.

Jan. 10, 1990.

Rehearing Denied Feb. 26, 1990.

Tex McConathy, Dallas, for appellant.

Angela Gholson, Dallas, for appellee.

Before ENOCH, C.J., and STEWART and KINKEADE, JJ.

## OPINION

KINKEADE, Justice.

Frank Delvis May appeals his conviction of the misdemeanor offense of driving while intoxicated. Following a jury trial, the court assessed punishment at sixty days' confinement and payment of an $850.00 fine. May argues that the trial court erred in refusing to grant him a mistrial after admitting in the hearsay evidence of the intoxilyzer machine readout. Further, May argues that the trial court erred in permitting the State to introduce evidence regarding the intoxication of May's passenger. Finally, May argues that the trial court erred in allowing the testimony of Richard Harris into evidence. Because the trial court committed harmful error in refusing to grant a mistrial after allowing in hearsay evidence of the intoxilyzer machine's readout, we sustain May's first point of error and need not consider his other points of error. We reverse the trial court's judgment and remand.

### Facts

On October 4, 1987, Trooper William Diggs, Jr., a highway patrolman, and his training officer, Trooper Paluga, stopped May's car solely for May's failure to dim the car's high beam headlights. Trooper Diggs stated that May never drove erratically. Trooper Diggs testified that he smelled alcohol on both May and his passenger, but that when questioned May told him that what Trooper Diggs smelled was Listerine. Trooper Diggs further stated that May failed to produce a driver's license or insurance card and failed to perform satisfactorily on a number of field sobriety tests. Trooper Diggs also testified that his report reflected that May told

him that he had low blood sugar, took Tetracycline, and had something wrong with his knees. Subsequently, the troopers arrested May's passenger for public intoxication and May for driving while intoxicated, then transported both of them to the Collin County jail. At the jail, Trooper Diggs videotaped May performing all sobriety tests unsatisfactorily, including an attempt to take an intoxilyzer test. Trooper Paluga, a certified intoxilyzer machine operator, conducted the test on May. Trooper Diggs and Trooper Paluga testified that they viewed numbers on the machine's computer readout, but that no printed results were available because of May's inability to complete the test.

May testified that he could not complete the test on the machine, because of an asthmatic condition which resulted in his inability to blow hard enough into the machine. May also stated that he had taken asthma medication, in addition to the Tetracycline, but had forgotten to tell the troopers. May denied drinking alcohol on the day in question. May stated that he never drank when he took his asthma medication, because the medication made him feel drowsy and loose.

### Admissibility of the Intoxilyzer Test Results

In his first point of error, May argues that the State failed to establish a proper predicate for the admission of the numbers on the intoxilyzer machine's readout into evidence. May objected at trial that the testimony regarding the numbers on the intoxilyzer's computer readout amounted to hearsay and a denial of his right to confrontation, because the State produced no printout card of the test results as required under the best evidence rule. On appeal, May contends that Trooper Diggs's testimony amounted to hearsay because the State failed to establish that: (1) a certified operator performed the test and properly prepared the alcohol solution; (2) the device functioned properly at the time of the test by evidence of periodic calibration and evaluation; and (3) the operator conducted the test in an approved manner.

The pertinent testimony of Trooper Diggs progressed as follows:

BY MR. McCONATHY:

Q You will furnish us with a copy from the printout from the Intoxilizer results, will you not?

A That could be obtained through a technical supervisor.

Q Well, you were there and you saw the Defendant take an Intoxilizer. You saw the green light go on and you saw the printout card because the officer had it in his hand. Then there is a result of that test he took somewhere.

A There are no printed complete results due to the fact that Mr. May would not give a breath sample. But there is a voided test record.

Q Now, you just got—you weren't certified in that machine at the time?

A I was not certified on the instrument at that time, that's correct.

Q Did you see the green light on on that machine when he blew in it?

A I saw—it's an amber light.

Q Did you see—

A It came on a couple of times.

Q There was a test going on and that card was in the machine, was it not, that test card?

A It was in the instrument, but as I said earlier, he wouldn't blow into it long enough and hard enough.

Q You know as being an operator, once that light goes on, there is a test being conducted once that light turns on?

A Yes, sir, and there were some numbers on the instrument, too.

Q Then we would—no, we would want the printout card, not the numbers. We want the printout card.

A Okay. Sir, there were no printed results on the card due to the fact that he did not satisfy the slope detector and he did not satisfy the time.

Q But you don't have the card?

A Not with me, no, sir, I do not.

Q Can you get it for us?

A It can be attained through a technical supervisor and he is stationed in Garland.

Q Who is that; George Huang?

A It's Jim Hughes.

Q Jim Hughes.

MR. McCONATHY: Thank you. No further questions.

THE COURT: Is this witness released by the State?

MS. BENKO: I have a couple more questions, Your Honor.

THE COURT: Ma'am, two minutes for any redirect examination.

MS. BENKO: Thank you, Your Honor.

FURTHER REDIRECT EXAMINATION

BY MS. BENKO:

Q You saw some numbers. What numbers did you see on the instrument?

MR. McCONATHY: Objection to any ·hearsay to what he saw, Your Honor; denied any confrontation since he said there is no card, there was no test results.

THE COURT: The objection is overruled, sir. You may answer the question.

Q (By Ms. Benko) What number did you see?

A I saw 0.20.

Q And as far as what step in the test itself would that indicate? I mean, what does that indicate to you?

A It indicates to me that the Defendant was no less than 0.20 and probably more.

Q And the legal definition of intoxication is .10 or above?

A Correct.

Q You know, after the Defendant breathed or attempted to breathe into the instrument itself, was he breathing real hard afterwards?

A He was not.

Q And I guess if he was breathing real hard, that's something you could see on the video tape, too, huh?

A I would think so, yes, ma'am.

MS. BENKO: Pass the witness.

THE COURT: Two minutes.

MR. McCONATHY: Thank you, Your Honor.

On further recross, Trooper Diggs again testified that no printout of the intoxilyzer test existed because May did not blow long enough into the machine. After this testimony, May again objected to the admission of the testimony regarding the numbers on the machine's computer readout and moved for a mistrial on the grounds that the admission of these numbers into evidence denied him his right to confrontation and failed to meet the requirements of the best evidence rule. On cross and redirect, Trooper Paluga gave essentially the same testimony as Trooper Diggs, also over May's hearsay objection.

 The State contends that May opened the door for the introduction of the intoxilyzer's computer *readout* when he questioned the troopers regarding the lack of a computer *printout,* and therefore the admission of otherwise inadmissible testimony does not constitute reversible error. *United States v. Taylor,* 508 F.2d 761, 763 (5th Cir.1975). We disagree with the State's contention. On recross, Trooper Diggs merely testified that the light on the machine's computer indicated that the machine was functioning and that no printout existed. May specifically requested the printout card, not the numbers, on the machine's computer readout. Further, the repeating of information observed on a computer readout, constitutes hearsay and does not fall within any recognized exception to the hearsay rule. *Vanderbilt v. State,* 629 S.W.2d 709, 724 (Tex.Crim.App. 1981). Accordingly, for this evidence to be admissible the State must have presented a proper predicate for the introduction of the intoxilyzer's computer readout.

 The Department of Public Safety uses the intoxilyzer test to ascertain the chemical content of the breath and then scientifically correlates the results to an anticipated chemical content of the blood. The intoxilyzer procedure achieves this purpose through the use of infrared light in lieu of reactive chemicals as used with the breathalyzer test. The intoxilyzer ma-

chine, however, still requires the use of a reference sample. Accordingly, if the State seeks to introduce the intoxilyzer test results into evidence it must establish: (1) that the machine functioned properly on the day of the test as evidenced by the running of a reference sample through the machine; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine; and (3) proof of the results of the test by a witness or witnesses qualified to translate and interpret such results so as to eliminate hearsay. *Harrell v. State,* 725 S.W.2d 208, 209–10 (Tex.Crim. App.1986).

■ Although May misstated the predicate needed to introduce the computer readout on the intoxilyzer machine, citing the predicate for the breathalyzer instead, this does not obviate the need for the State to lay a predicate. The State introduced no testimony (1) that the machine functioned properly on the day in question; (2) of the existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine; or (3) proof of the results by a qualified witness. In fact, one of the testifying witnesses admitted that he was not a certified intoxilyzer machine operator. Since the State failed to lay a proper predicate for the introduction of the intoxilyzer's computer readout, we conclude that the trial court committed an error in admitting into evidence hearsay testimony.

### Harm Analysis

■ The State further contends, however, that any error committed by the trial court was harmless. On appeal, we shall reverse the judgment under review, unless we can determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *Mallory v. State,* 752 S.W.2d 566, 569 (Tex. Crim.App.1988); Tex.R.App.P. 81(b)(2). The State indicted May on, and the court charged the jury solely on, the theory that May had demonstrated a loss of the normal use of his mental and physical faculties. May denied drinking and offered an expla-

nation for any apparent loss of faculties and inability to complete the intoxilyzer test. Trooper Diggs testified that the intoxilyzer's readout showed .20; that this number indicated that May was intoxicated to a level no less than, and probably more than, .20; and that a level of .10 met the "legal definition" of intoxication. Further at final argument, the State emphasized the trooper's intoxilyzer readout testimony. Accordingly, we cannot find beyond a reasonable doubt that the introduction of the numbers off the intoxilyzer's readout did not contribute to May's conviction or punishment. Therefore, we sustain his first point of error. Because we sustain May's first point of error, we do not need to consider his other points of error. We reverse and remand.