**AFFIRMED and Opinion Filed August 29, 2022**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-20-00241-CR**
_____

**TRINH HOANG DIEM NGUYEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1800357-Q**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Goldstein
Opinion by Justice Goldstein

After a plea of not guilty and trial by jury, appellant Trinh Hoang Diem Nguyen was convicted of manslaughter. *See* TEX. PENAL CODE ANN. § 19.04. The jury found that appellant used a deadly weapon, her vehicle, and assessed punishment. The trial court entered a judgment of conviction and sentenced appellant to twenty years' confinement. In two issues, appellant contends that (1) the evidence was legally insufficient to establish the required mental state for manslaughter and (2) the trial court erred in admitting certain evidence over her objections on grounds of hearsay and the Confrontation Clause of the U.S. Constitution. We affirm the judgment.

# BACKGROUND

On April 20, 2017, at around 3:00 p.m., appellant was driving southeast on Lemmon Avenue in Dallas, Texas, just west of the Dallas North Tollway. Witnesses testified that appellant was driving erratically and weaving in and out of traffic. As she approached Kings Road, appellant's vehicle jumped the curb and struck a fire hydrant, causing her driver-side airbag to deploy. The vehicle then continued across Kings Road, jumped the curb on the other side, and struck Pedro Hernandez, a pedestrian who was walking to work. The vehicle traveled another hundred feet or so, dragging Hernandez for about twelve feet. After hitting a utility pole and snapping it in two places, appellant's vehicle crashed into a second utility pole and stopped. Several onlookers gathered to provide assistance. Among them was a nurse who attempted CPR on Hernandez. Others called 911. An ambulance arrived and transported Hernandez to Parkland Hospital, where he was pronounced dead. An autopsy revealed that Hernandez died as a result of blunt-force injuries.

After the crash, appellant exited her vehicle. Witnesses testified that she appeared calm and emotionless. Appellant walked into a nearby car dealership and went into the restroom. An employee at the dealership testified that when appellant came out of the restroom, she was on the phone and he heard her say, "I think I totaled my car." Appellant went back to the crash site and spoke with Dallas Police Department (DPD) Officer Greg Valtadoros, the first officer to arrive at the scene. Officer Valtadoros testified that appellant stated that she was "looking at her GPS"

and "was not familiar with the area." Appellant also spoke with Ronald Cathart, a former DPD detective and current investigator working with the Dallas County District Attorney's office. Cathart testified that appellant "told me that wind blew her car up on the sidewalk."

Officer Michael Phillips, an accident investigator for the DPD traffic division, was assigned to the case. Officer Phillips executed a search warrant for the event data recorder of appellant's vehicle, which was being held at a DPD impound lot. The event data recorder, often called the "black box," is a subcomponent of the vehicle's airbag control module. The black box records certain information about the vehicle when an "event" occurs—i.e., the vehicle undergoes very sudden acceleration or deceleration. The information includes the vehicle's speed and certain driver inputs, such as whether the brake and accelerator pedals are being pressed and whether the anti-lock brake system is engaged. Once he retrieved the black box, Officer Phillips connected it to his laptop to retrieve the data using software developed by Robert Bosch LLC. The Bosch software takes the raw data from the black box and generates a "crash data report" that includes the information above.

The report, which was admitted over appellant's objection, showed that the black box recorded two "events" separated by 1.9 seconds. Officer Phillips offered his opinion, also admitted over appellant's objection, that the first event corresponded with appellant's collision with the fire hydrant, while the second event

corresponded with the vehicle striking the second utility pole. The report indicated that appellant was travelling fifty miles per hour at the first event, and other testimony established appellant was traveling fifteen miles per hour in excess of the posted speed limit. The crash data report reflected that the vehicle was traveling at thirty-six miles per hour when the second event occurred. Officer Phillips opined that, based upon the report, from the time the vehicle struck the fire hydrant to the time the vehicle crashed into the second utility pole, neither the brake nor the accelerator was being depressed and the vehicle was "coasting."

Appellant was indicted for manslaughter and the lesser-included offense of criminally negligent homicide. *See* TEX. PENAL CODE ANN. §§ 19.04, 19.05. The jury trial commenced on February 10, 2020. The jury found appellant guilty of manslaughter, made an affirmative deadly-weapon finding, and assessed punishment at 20 years' confinement and a $10,000 fine. The trial court accepted the jury's findings and entered judgment accordingly. This appeal followed.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE

In her first issue, appellant contends that the evidence was insufficient to establish her mental state of recklessness for the charged crime of manslaughter. She argues that, at most, the evidence was sufficient to convict her of criminally negligent homicide and we should either remand for a new trial or render judgment on the lesser-included offense.

## A.    Standard of Review

Due process requires that the State prove every element of a charged offense, including the defendant's mental state where applicable, beyond a reasonable doubt. *See Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). When reviewing whether the evidence is sufficient to support a criminal conviction, we consider whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *See also Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (jury is the sole judge of credibility and weight to be attached to the testimony of witnesses); TEX. CODE CRIM. PROC. ANN. art. 38.04 (jury is the exclusive judge of the facts proved and weight given to the testimony). We may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We are not permitted to use a "divide and conquer" strategy for evaluating sufficiency of the evidence because that approach does not consider the cumulative force of all the evidence. *Murray*, 457 S.W.3d at 448.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Nisbett*, 552 S.W.3d at 262. Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.* When the evidence requires the factfinder to make inferences, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Id.* at 448–49.

### B.    Applicable Law

Under the Penal Code, a person commits the offense of manslaughter if the person "recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04(a). In contrast, a person commits the offense of criminally negligent homicide if the person "causes the death of an individual by criminal negligence." *Id.* § 19.05(a). Criminally negligent homicide is a lesser-included offense of manslaughter, "because the two offenses differ only in that criminally negligent homicide requires a less culpable mental state." *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005). The mental states required for the two offenses are defined in subsections (c) and (d) of Penal Code section 6.03:

(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c), (d). The difference between manslaughter and criminally negligent homicide, therefore, is the difference between "conscious risk creation" and "inattentive risk creation." *See Stadt*, 182 S.W.3d at 364 (quoting *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975).

Both manslaughter and criminally negligent homicide are "result of conduct" crimes, meaning that "the culpable mental state relates to the result of the conduct, i.e., the causing of the death." *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003); *See also Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) ("Manslaughter is a result-oriented offense: the mental state must relate to the results of the defendant's actions."); *Stinecipher v. State*, 438 S.W.3d 155, 161–62 (Tex. App.—Tyler 2014, no pet.) ("Criminally negligent homicide is a result-oriented offense, with the gravamen of the offense being an individual's death."). But it is not

necessary for the State to prove awareness of a specific risk to a specific individual. *Nicholson v. State*, 594 S.W.3d 480, 489 (Tex. App.—Waco 2019, pet. granted) (citing *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref'd)).

### C. Analysis

Appellant advances two arguments why there was insufficient evidence of recklessness. First, she argues that the evidence established that she "was not aware of the risk surrounding her conduct, and due to the lack of awareness of the risk, could not disregard that risk." Second, she argues that there was no evidence that her "conduct was such that she affirmatively created any risk."

We begin with whether appellant's conduct created a substantial and unjustifiable risk that a death would result. Appellant contends that "[t]here was no proof submitted that any of [her] conduct was such that she affirmatively created any risk." We disagree. Two witnesses testified about appellant's driving leading up to the incident. Feign Draper and Julian Carajal were driving southeast on Lemmon Avenue when they noticed appellant's vehicle behind them. Draper testified that he saw appellant's vehicle in his rearview mirror tailgating him "two or three times." He said the vehicle went "from the middle lane, to the right lane, back to the middle lane, between weaving in and out of traffic." He did not see the vehicle signal for the lane changes. Draper also testified that "the way [appellant] was weaving in and out, she was speeding through there like she was in her – in a rush to get somewhere."

He described her driving as "Very aggressive. Very erratic." Carajal testified he noticed appellant's vehicle approaching in his rearview mirror. He said the vehicle was moving "quicker" than the flow of traffic, "coming in and out of lanes," and "trying to get around cars." He did not see appellant's vehicle using turn signals. Carajal testified that as appellant's vehicle approached his, he had to apply his brakes to avoid being hit. It was immediately after the near-miss that appellant's vehicle "went straight over to the sidewalk" and struck Hernandez. Asked to describe appellant's driving, Carajal responded, "It looked like she was in a hurry. Erratically." On this record, we conclude the evidence was sufficient for the jury to conclude beyond a reasonable doubt that appellant's driving created a substantial risk of a resulting death. *See Trepanier*, 940 S.W.2d at 829 (driver consciously created risk by weaving in and out of traffic at inappropriate speed and attempting to pass delivery truck on the right by driving on unimproved shoulder of roadway where he struck and killed a bicyclist); *Pardun v. State*, No. 05-16-00792-CR, 2017 WL 5897897, at *4 (Tex. App.—Dallas Nov. 29, 2017, pet. ref'd) (mem. op., not designated for publication) (driver created risk by "blowing past" other drivers at nearly twenty miles per hour over the posted speed limit and failing to stop in time to avoid a collision).

Appellant argues that her conduct did not rise to the level of recklessness. At oral argument, appellant's counsel explained that in cases where juries have found recklessness, some affirmative conduct beyond the act of speeding and weaving in

and out of traffic, which counsel termed "speeding plus," supported the finding that the accused consciously created the risk. In *Williams v. State*, for example, the defendant driver struck and killed a jogger on the shoulder of a road after ingesting muscle relaxants and "continu[ing] to drive even though he was losing consciousness." *See* 531 S.W.3d 902, 913 (Tex. App.—Houston [14th Dist.] 2017, pet. granted) aff'd, 585 S.W.3d 478 (Tex. Crim. App. 2019). The court of appeals affirmed his conviction for manslaughter, holding in part that the above evidence was sufficient to show recklessness. Appellant argues that the ingestion of drugs was the affirmative conduct that created a substantial and unjustifiable risk to the pedestrians.[1]

We reject appellant's argument. To prove the mental-state element of manslaughter, the State must prove beyond a reasonable doubt that appellant engaged in conduct that created a substantial and unjustifiable risk of death to others

---

[1] Appellant cites two other cases for this argument, but both are distinguishable. In *Atkinson v. State*, 517 S.W.3d 902, 905 (Tex. App.—Corpus Christi 2017, no pet.), the defendant was accused of murder, but the jury found him guilty of manslaughter. The court of appeals concluded that the evidence was sufficient for the jury to find that the defendant killed the victim intentionally. *See id.* at 906. Because the evidence was sufficient to prove the mental-state element of murder, it was also sufficient to prove the mental state for the lesser-included offense of manslaughter. *See id.* (citing TEX. PENAL CODE ANN. § 6.02(e) ("Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged.")). Appellant also cites *Davis v. State*, 955 S.W.2d 340, 352 (Tex. App.—Fort Worth 1997, pet. ref'd), in which the defendant, a periodontist and oral surgeon, was convicted of manslaughter after he administered a fatal dose of sedatives to a patient. On appeal, the defendant did not challenge the sufficiency of the evidence of his mental state, but rather argued certain evidence was prohibited character evidence and should have been excluded. *See id.* at 346–47. The court of appeals concluded the trial court did not err in admitting the evidence because it was relevant to the "conditions and circumstances under which" the defendant over-sedated the victim. *See id.* at 349. *Atkinson* nor *Davis* do not inform our analysis of appellant's "speeding plus" argument because neither case involved the circumstances under which a driver can be found to act recklessly in the operation of a motor vehicle.

and consciously disregarded that risk. *See* TEX. PENAL CODE ANN. §§ 6.03(c), 19.04(a); *Stadt*, 182 S.W.3d at 364. Nothing in the Penal Code suggests that the conduct must be outside of or in addition to the act of driving itself. For this proposition, *Williams* itself is instructive. There, the jury was instructed that it could find appellant guilty of recklessly causing the victim's death by several means, including:

> (1) leaving the roadway in his car and traveling onto the shoulder of the road, (2) driving his car on the shoulder of a roadway, (3) driving his car at an unsafe speed for road conditions and road shoulder conditions, (4) failing to maintain a proper lookout and avoid hitting [the victim] with his car, (5) failing to properly steer and apply brakes, causing his car to collide with Treesh, or (6) driving a car after ingesting drugs[.]

*Williams*, 531 S.W.3d at 911–12. The court explained that proof of any one of these alternative means was sufficient to support the defendant's conviction. *See id.* at 912 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). Analyzing the evidence, the court concluded that it was "sufficient to support all of the alternatives presented to the jury with the sole exception of driving at an unsafe speed." *Id.* As the court observed, the operative question regarding the defendant's mental state is "whether his reckless driving caused [the victim's] death" because "[r]ecklessness can be applied generally to the act of driving." *Williams*, 531 S.W.3d at 912.

We agree with the *Williams* court's analysis. The evidence here showed that appellant was speeding, tailgating, weaving in and out of traffic, and not using a turn signal to indicate lane changes. It also showed that when appellant's vehicle jumped onto the curb, she failed to take actions, such as braking or veering back onto the

–11–

road, which would have avoided running over Hernandez. This evidence was sufficient for the jury to conclude that appellant created the risk; there was no need for the State to prove that she engaged in some additional conduct, such as taking drugs. *See Williams*, 531 S.W.3d at 912.

We now turn to whether the evidence was sufficient for the jury to find beyond a reasonable doubt that appellant consciously disregarded that risk. Appellant contends that "[t]he only testimony elicited with respect to statements made by the Appellant about circumstances surrounding the accident was that she had been blown off the roadway and that she didn't mean to hurt him." We disagree that this was the only evidence the jury could consider. By its nature, a culpable mental state must generally be inferred from the circumstances. *Nisbett*, 552 S.W.3d at 267. "We cannot read an accused's mind, and absent a confession, we must infer his mental state from his 'acts, words and conduct.'" *Id.* (internal punctuation omitted). For example, "[a]ttempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt." *Ex Parte Weinstein*, 421 S.W.3d 656, 668 (Tex. Crim. App. 2014).

Here, the jury heard testimony from officers who spoke with appellant after the incident. Officer Valtadoros was asked whether there was anything he believed distracted appellant from her driving based on his conversation. He replied that appellant "did say that she was looking at her GPS and that she was not familiar with

the area." Detective Cathart questioned appellant to determine why the vehicle left the roadway and was driving on the sidewalk. He testified that appellant "told me that the wind blew her car up on the sidewalk." Detective Cathart explained that "the only time I've ever seen a car get blown up on the sidewalk is when we've had tornadoes come through the metroplex." Officer Phillips similarly testified the only cases in which he had heard of vehicles being blown off the roadway was "in a tornadic event." The jury also heard evidence of the weather conditions. Draper testified that it was a sunny day, the roads were dry, and there was no wind. Courney Colston, a sales consultant at the car dealership, testified that it was a clear day and there was no wind. On this record, the jury could have reasonably found that appellant's statements to the police were inconsistent and her explanation about the wind was implausible. *See Nisbett*, 552 S.W.3d at 267; *Weinstein*, 421 S.W.3d at 668.

After reviewing the evidence in the light most favorable to the conviction, we conclude a reasonable jury could have found beyond a reasonable doubt that appellant created a substantial and unjustifiable risk of death and was aware of but consciously disregarded that risk. We overrule appellant's first issue.

## II.    ADMISSION OF EVIDENCE

In her second issue, appellant contends that the trial court erred in admitting the crash data report from her vehicle's black box into evidence. She argues that the

report constituted inadmissible hearsay and its admission violated the Confrontation Clause of the Sixth Amendment.

## A. Standard of Review

We review a trial court's ruling to admit or exclude evidence for an abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial court's ruling constitutes an abuse of discretion only when it falls outside the zone of reasonable disagreement. *Id.* A trial court does not abuse its discretion if its ruling "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

## B. Applicable Law

Hearsay is a "statement" that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). The term "statement" means "a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute for verbal expression." TEX. R. EVID. 801(a). The "declarant" is "the person who made the statement." TEX. R. EVID. 801(b).

The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" U.S. CONST. AMEND. VI. The Confrontation Clause "provides a simple yet unforgiving rule: the State may

–14–

not introduce a testimonial hearsay statement unless (1) the declarant is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant." *Lee v. State*, 418 S.W.3d 892, 895 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011)). The threshold inquiry in analyzing an alleged violation of the Confrontation Clause is whether the hearsay at issue is "testimonial."[2] *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 51 (2004)). The Supreme Court identified three kinds of out-of-court statements that could be considered testimonial:

- ex parte in-court testimony or its functional equivalent—that is, materials such as affidavits, custodial examinations, prior testimony that the accused was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;

- extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and

- statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (quoting *Crawford*, 541 U.S. at 51–52).

---

[2] Although evidentiary rulings are usually reviewed for an abuse of discretion, a statement's testimonial nature is a question of law that we review de novo. *Lee*, 418 S.W.3d at 895.

## C. Analysis

In order to determine whether the crash data report generated from the black box of appellant's vehicle constitutes hearsay, we must determine whether it constituted the statement of a person. The State argues that it did not, because the black box is a device that merely records physical information and stores that data until it is retrieved. We agree.

Texas courts, including this one, have recognized a distinction between "computer-generated data" and "computer-stored data." *See, e.g.*, *Stevenson v. State*, 920 S.W.2d 342, 343 (Tex. App.—Dallas 1996, no pet.) (en banc); *Murray v. State*, 804 S.W.2d 279, 284 (Tex. App.—Fort Worth 1991, pet. ref'd). In *Murray*, our sister court concluded that a printout generated from an electronic door lock in a hotel was "computer-generated data" and therefore not hearsay. *See id.* The court based its reasoning in part on the following analysis in a Texas Bar Journal article by Professor David Schlueter:

> Although use of terms of art such as "read" or "say" might lead one to assume that a hearsay problem is present . . . it would be incorrect to assume that a hearsay problem is present anytime a machine "talks," transmits data, or otherwise communicates information.
>
> . . . .
>
> [C]an a machine, in itself, be a "declarant" and can it make "statements?" The answer to the first question is "no." Mechanical devices, like bloodhounds, are not persons and cannot be "declarants." But they can serve as vehicles for storing or transmitting "statements" made by a "person." Thus, if Officer Jones . . . was reading information which had been entered by a person, such as a business ledger or letter, those portions of the hearsay definition dealing with a statement by a

–16–

declarant would be satisfied. If, however, Officer Jones was reading information which was simply being automatically recorded by the machine, such as climatological data, a hearsay problem is not presented. The mere fact that the same data was ultimately printed in hard copy would not convert it into hearsay.

*Id.* (quoting David A. Schlueter, *Hearsay—When Machines Talk*, 53 TEX. B.J. 1135 (Oct. 1990)). In his article, Professor Schlueter criticized this Court's decision in *May v. State*, 784 S.W.2d 494 (Tex. App.—Dallas 1990, pet. ref'd). There, a panel of this Court referred to a computer readout from an intoxilyzer as hearsay but ultimately held that the evidence from it was inadmissible because the State failed to lay the proper predicate. *See id.* at 498. Six years later, this Court, sitting *en banc*, considered the question of whether intoxilyzer results constitute hearsay. *Stevenson*, 920 S.W.2d at 343. Relying on *Murray* and similar cases, we concluded that "[t]he intoxilyzer instrument is a computer, not a person" and "[b]y definition, therefore, the intoxilyzer is not a declarant."[3] *Id.* at 343 (citing *Murray*, 804 S.W.2d at 284; *Ly v. State*, 908 S.W.2d 598, 600 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (electronic monitoring computer not declarant)).

Here, the State offered the testimony of Officer Phillips to lay the foundation for admitting the crash data report. On appellant's objection, the trial court excused the jury and heard testimony from Officer Phillips to determine the report's

---

[3] Appellant argues *Murray* was improperly decided but does not address *Stevenson*. Even if we were inclined to revisit *Stevenson*, as a panel of this Court, we have no authority to do so. *See Daniel v. State*, 641 S.W.3d 486 (Tex. App.—Austin 2021, pet. filed) (court of appeals bound by its prior decisions absent intervening change in statutory law or contrary decision by the en banc court or the Court of Criminal Appeals).

admissibility. Officer Phillips testified that the black box of appellant's vehicle is programmed to record certain conditions and driver inputs surrounding "events." He stated that the black box recorded data related to two events from the vehicle's most recent ignition cycle—appellant's collision with the fire hydrant and its collision with the second utility pole. The data was stored in the black box as a "CDRX file" which "means nothing to human beings." However, by connecting the black box and running the Bosch software on the file, Officer Phillips was able to generate the crash data report, which "could be printed up as a PDF." Although he did not investigate the scene of the crash himself, Officer Phillips testified that he compared the crash data report to photographs of the scene and diagrams prepared by other officers. He concluded that the data on the black box was a reliable indicator of the inputs to the vehicle immediately before the crash, stating: "Everything I see here makes me believe that this data that we've kept that has been captured was captured during the crash that we're discussing here today."

We conclude the crash data report constitutes computer-generated data containing objectively recorded facts. The black box of appellant's vehicle is a computer and, by definition, cannot be a declarant for purposes of the rule against hearsay. *Stevenson*, 920 S.W.2d 343. Further, to the extent appellant argues that the report constitutes hearsay because it records inputs from the driver, we conclude that such inputs are not "statements" within the meaning of the hearsay rule. The types of inputs the black box records, such whether the brake or accelerator pedals were

–18–

depressed or whether the steering wheel was being turned, do not constitute the driver's "oral or written verbal expression, or nonverbal conduct that [the driver] intended as a substitute for verbal expression." TEX. R. EVID. 801(a).

Appellant argues in the alternative that although the raw data recorded by the black box might not be hearsay, the report generated by it is testimonial because it was prepared by a person using a software program written by a person. We need not consider whether admission of the crash data report violated the Confrontation Clause on grounds that it was generated by a person because that person, Officer Phillips, testified at trial and was subject to cross-examination. *See Crawford*, 541 U.S. at 59, n.9 ("When a declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."); *see also Cheek v. State*, No. 07-08-00418-CR, 2010 WL 2836974, at *2 (Tex. App.—Amarillo July 20, 2010, no pet.) (mem. op., not designated for publication) (declining to address whether intoxilyzer data presented Confrontation Clause issue because the intoxilyzer's operator appeared at trial to testify).

Nor are we persuaded by appellant's argument that the crash data report constituted testimonial evidence by virtue of the fact that people programmed the software used to retrieve the data and render it as a legible report. Although we have found no Texas cases directly addressing this argument, other courts across the country have considered and rejected it. In *State v. Ziegler*, on remarkably similar facts to this case, the Minnesota Court of Appeals held that a report generated by a

vehicle's event data recorder did not constitute "testimonial statements of the people who wrote the computer program that operates" the device. 855 N.W.2d 551, 557 (Minn. Ct. App. 2014). The court reasoned: "To be sure, there can be no statements which are wholly machine-generated in the strictest sense; all machines were designed and built by humans. But certain statements involve so little intervention by humans in their generation as to leave no doubt that they are wholly machine-generated for all practical purposes." *Id.* (quoting *United States v. Lamons*, 532 F.3d 1251, 1263 n.23 (11th Cir. 2008)); *see also United States v. Hayes*, 612 Fed. App'x 673, 675 (4th Cir. 2015) (finding no error in admission of report automatically generated by computer program indicating defendant shared child pornography because "[d]ata generated by a machine, where the only source of the statement is the machine printout and not a person, is not subject to the Confrontation Clause"). We agree with the reasoning in these cases. The record reflects that the State did not offer the testimonial statements of the programmers who wrote the Bosch software. Rather, it offered the report generated by that software.

We conclude the trial court did not err in admitting the crash data report and overrule appellant's second issue.

## CONCLUSION

We conclude the evidence was legally sufficient for the jury to find beyond a reasonable doubt that appellant recklessly caused the death of Pedro Hernandez. We further conclude the crash data report generated from the black box of appellant's

vehicle does not constitute hearsay and its admission in evidence did not violate appellant's rights under the Confrontation Clause of the Sixth Amendment. We overrule appellant's issues and affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
200241F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TRINH HOANG DIEM NGUYEN,
Appellant

No. 05-20-00241-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1800357-Q.
Opinion delivered by Justice
Goldstein. Justices Molberg and
Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered August 29, 2022